# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY.

NOVEMBER TERM, 1889.

---

ELEANOR B. JONES and ELIZA G. BANNARD, executrixes &c. of William L. Jones, deceased, and JAMES D. VANDERVEER, administrator of Abraham Vannest, deceased, appellants,

*v.*

DAVID B. FAYERWEATHER et al., respondents.

1. When there are several bills, which have not been consolidated, seeking assets that have been transferred by a debtor in fraud of creditors, the complainants in one of such bills cannot, on motion, be permitted to intervene in the other in order to assail its decree.

2. If the creditor in one of such suits is aggrieved by the decree in another, his remedy is by an original bill.

237

3. An enrolled decree may be altered through a bill of review filed by one of the parties in that suit, where there is a plain mistake of law apparent on the record in view of the uncontested evidence.

4. It would seem that without such bill this may be effected by the consent of all the parties to the suit.

5. In case of creditors' bills of this character, all creditors may claim a share in the distribution of the assets at any time before they have been dispensed by the court.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Jones* v. *Davenport, 18 Stew. Eq. 77.*

The facts of the case are sufficiently stated in the opinion.

*Mr. Charles A. Reed* and *Mr. R. V. Lindabury*, for the appellants.

Brief for appellants.

1. My first point is, that the complainants in the *Fayerweather and Ladew Case* had no standing before the chancellor to make a motion to vacate our decree.

No one but a party to a suit can make any motion in it except for the purpose of being made a party. *Linn* v. *Wheeler, 6 C. E. Gr. 231; Esterbrook Co.* v. *Ahern, 4 Stew. Eq. 3.*

It is true that a decree may be impeached by one who is affected by it, although he is not a party to it, but that can only be done, under our practice, I submit, by original bill, or, under the constitution, by direct appeal. *Esterbrook Co.* v. *Ahern, supra.*

Here the complainants (in the *Fayerweather and Ladew Case*) moved to vacate our decree, and obtained an order from the chancellor which in effect vacated it, without being made parties to the suit, or showing, in any way of which the court can properly take notice, that it affected them to any extent whatever.

I submit that the order of the chancellor should be reversed on this ground alone.

2. But I submit, further, that the complainants in the *Fayerweather and Ladew Case* have no right to this order, because the

decree which it vacates does not harm them. Its only effect is to bring additional funds into the common pool from which they and we must be paid.

There is no pretence on our part that it gives us any priority over them or anybody else. Our bill was filed not only for all creditors who chose to come in under it, but the prayer is, that the moneys realized thereunder may be appropriated toward the payment of Davenport's debts, generally; and to that end both the amended decree and the executions issued thereon direct that all moneys made thereunder be brought into court. The Fayerweather party can gain nothing by striking out our decree, unless they can also exclude us from participating in the distribution of the moneys realized from the sale of Mrs. Davenport's property. This, I submit, they cannot do, because their bill was filed for the benefit of themselves not only, but also of all the other creditors of James S. Davenport, deceased, who might come in and contribute toward the expense of their suit; and under that we may come in as applying creditors at any time before distribution.

This, I submit, is the law, the opinion of the vice-chancellor to the contrary notwithstanding. *Strike's Case, 1 Bland 57.*

To the same effect is *Strike* v. *McDonald, 2 Har. & G. 232.* This was also a fraudulent conveyance case, and holds that in such a case the bill is a creditor's bill, whether so called or not, and that creditors may come in at any time before distribution. The case reviews and approves the English practice.

In the State of New York there are a number of cases to the same effect as the Maryland cases.

The first bearing on the subject is that of *Edmeston* v. *Lyde, 1 Paige 637.*

In *Wilder* v. *Keeler, 3 Paige 164,* the question arose as to when a creditor might present his claim. In discussing the question the chancellor declared the practice to be as follows: " By the practice of the English court of chancery, it appears to be a matter of course to permit a creditor to come in and prove his debt at any time before the fund is actually distributed and paid out, upon a sufficient excuse shown for not coming in

before the master in due season, and upon the payment of all the costs which have been produced by the delay. In such case, however, he must pay the expense of proving his debt before the master. In the case of *Angel* v. *Hadden*, 1 *Mad. 529*, Sir Thomas Plummer permitted a creditor to come in and prove his debt after the money had actually been apportioned among the other creditors, it not having been paid over to them by the accountant-general. And in the case of *Gillespie* v. *Alexander*, *3 Russ. 130*, the master of the rolls permitted a creditor to come in and prove his debt after a part of the distributees had received their shares. Although, upon appeal from his decree, it was reversed, so far as it went to charge the whole debt upon those shares of the legatees which remained in court, Lord Eldon did not question the propriety of permitting the creditor to come in and prove his debt even at that late period. It appears by some of the English cases that it is the practice there to permit the creditor to take an *ex parte* order to go before the master to prove his debt. The same course was adopted in the case of *Mason* v. *Codwise*, *6 Johns. Ch. 184*, but the regularity of that proceeding was questioned, and was finally settled by a stipulation between the parties."

In *Innes* v. *Lansing*, *7 Paige 583*, a bill was filed by a creditor of a limited copartnership, setting up the insolvency of the firm, and praying that its estate might be sequestered and distributed among the complainant and other creditors. The defendants applied for a stay of proceedings, showing by affidavit that another suit of a similar character, on behalf of other creditors, was already pending in the court. The chancellor denied the application, * * * and cited *Pott* v. *Gallini*, *1 Sim. & S. 206* ; *Moore* v. *Prior*, *2 Younge & C. 375* ; *Sheppard* v. *Towgood*, *Turn. & R. 379*.

In *Mahlon* v. *Demarest*, *1 Rob. (1887) 717*, a creditor's bill was filed to set aside a fraudulent conveyance, and before the decree the defendants came forward and paid the complainant the amount of his debt. At the time of payment other claims had been put in the hands of the complainant's attorneys, and they refused to discontinue the suit, but gave the complainant

power of substitution. He thereupon employed other attorneys, who discontinued the complaint. Upon application of the first attorneys on behalf of applying creditors to set aside the order of discontinuance, the court declared that it was proper for the complainant to discontinue at any time before a decree; that no applying creditors could interfere or acquire any rights in the suit until decree, and stating and relying upon the foregoing cases in New York. The same was held in *O'Brien* v. *Bromey, 49 Hun 109*, and in *Derby* v. *Yale, 13 Hun 273*.

All these were fraudulent assignment cases, and the decisions in them are bottomed on *Edmeston* v. *Lyde* and *Innes* v. *Lansing*, the courts holding that in those two cases Chancellor Walworth established, first, that a creditor's bill might be filed for the benefit of the complainant and all others who chose to come in *under the decree;* and, second, that until a decree was taken, they could not come in and acquire any right of interference or be prevented from filing a bill of their own. Referring to these cases, Mr. Barbour, in his work on Chancery Practice (*vol. 2, p. 169*), declares the rule to be as follows: " Where a creditor files a bill in behalf of himself and all others who may come in and participate in the burdens and the benefits, the others are allowed to come in at any time, either before or after the decree, until the fund is actually distributed and paid out, upon a sufficient excuse shown for not coming in before the master in due season, and on payment of the costs occasioned by the delay, if any."

But we shall be entitled to come in under the Fayerweather and Ladew decree at any time before distribution, I submit, for another and still better reason. It is, that the right and the lien upon which that case is founded is common to every creditor of James S. Davenport, deceased, and cannot be enforced by any one of them for his own exclusive benefit, or otherwise than for the benefit of all. It will be seen, by reference to the Fayerweather and Ladew bill of complaint, that they have no judgment in this State, nor any lien of any sort whatever, against either the real or personal property of James S. Davenport, deceased, except that which the statute gives to every creditor of a deceased debtor.

16

This right is that which was declared and enforced in *Haston* v. *Castner, 4 Stew. Eq. 697*, and *Currie* v. *Knight, 7 Stew. Eq. 485*, and nothing more. That this is a right which can be enforced only for the common benefit, is well illustrated by the case of *Arnold* v. *Hageman, 18 Stew. Eq. 186*.

Not only have the Fayerweather and Ladew parties no right to collect this $18,000 of misappropriated trust funds from Mrs. Davenport, and divide it among themselves, but their decree, which in effect adjudges it to them, is, I submit, itself a nullity.

The case of *Hamilton* v. *Houghton, 2 Bligh 169*, is parallel. Lord Redesdale said that he concurred, that this decree was erroneous in every respect; it was erroneous unquestionably in decreeing a party to that deed entitled to that which it then gave him; it was erroneous in decreeing that he was entitled to anything, without giving the same benefit to the other creditors under the trust.

I submit that the Fayerweather and Ladew party are in no position, and have no right, to attack our decree.

3. But I submit, further, that our amended decree is right, just and equitable, and should be upheld against all the world.

Why were we not entitled to such a decree at the time this one was signed? Not because the evidence did not warrant it, for the vice-chancellor expressly says that it did. But simply and solely, according to the vice-chancellor, because we had charged fraud in respect to the transfer of the personal property in vague and uncertain terms, instead of directly and specifically, as good pleading requires.

But vagueness and uncertainty in a bill of complaint can only be objected to by a defendant, and that ordinarily by demurrer or on motion to strike out. *Story Eq. Pl. § 572; Rorback* v. *Dorsheimer, 10 C. E. Gr. 517*. The latter was a fraud case, and it was objected on final hearing that the fraud was charged only in general terms and was not, therefore, within the rule requiring it to be stated specifically. (See remarks of chief-justice *p. 518*).

How well those words of the chief-justice fit and elucidate the present case! Here the defendants not only did not demur

or move to strike out, but they answered the charge of fraud in respect to the disposal of the personal property, and answered it, too, with reference to the bank stock, showing that they understood the issue which the complainant desired to raise and were willing to meet it. Upon the issue so raised, an abundance of testimony was taken without a suggestion from anybody that it was inapplicable, and when the vice-chancellor found and pronounced, as a conclusion from the facts proven, that there was fraud in the transfer of the bank stock, the defendant, Maria Davenport, fully and formally consented to the entry of a decree requiring her to account for the value of the same. Really, I cannot understand how there can be any doubt as to the substantial basis in the record for this decree. The consent of the defendants alone would hold it, I imagine, even if there were no charge in the bill with respect to the personal property.

But, in view of that charge and the answer to it, and the fact that the bill is for discovery as well as relief, who has a right to say that the decree has no foundation in the issue, or that the case is ruled by *Munday* v. *Vail, 5 Vr. 518 ?*

It seems to me, to use the picturesque language of the vice-chancellor, that his conclusion on this point is "startlingly novel."

But it is said by the vice-chancellor that Mrs. Davenport had no right to consent to this decree. This is upon the theory that, by so doing, she adversely affected the rights of other creditors. If I am correct in my second point, however, no such result follows. But if I am wrong, and in this struggle each creditor is for himself, then Mrs. Davenport's right in the matter, I submit, is clear.

She was the executrix of her husband's estate and had been guilty of a devastavit. She was, therefore, liable to every creditor of her husband for the full amount of his debt. She would have been justified in confessing judgment to Mr. Jones or any other creditor, and, in consenting to a personal decree against herself, she did no more than this. If, by superior diligence, the counsel for Mr. Jones obtained the first execution and levy upon her property, theirs is the right of priority in equity as well as

law.  I submit that there is nothing in the point that Mrs. Davenport had no right to consent to a decree.

4. But it is insisted, further, that the chancellor had no power to make the amended decree.  This was put below upon the ground, first, that the cause had been referred to the vice-chancellor and was, therefore, out of the hands and beyond the reach of the chancellor.

It can hardly be necessary in this case to discuss the relations of the chancellor to the vice-chancellors, or their respective functions and duties.  It is enough to say that the reference to the vice-chancellor had been accomplished, and the chancellor had signed the decree which the vice-chancellor had advised.  To insist now that the chancellor had no power to alter or amend this decree, except upon the advice of the vice-chancellor, is to claim an abridgment of the chancellor's constitutional prerogatives, entirely beyond the power of the body which created the vice-chancellors.

The second ground upon which the want of power in the chancellor to amend the decree was urged in the court below is, that at the time it was amended the term had ended in which the original decree was made, and that with the term ended the power of the chancellor to alter the decree.

The only cases cited in support of this contention were decided in the federal courts, and I have been unable to find any others elsewhere to such effect.

In New Jersey, it seems to be well settled that a decree may be altered, amended, vacated or set aside at any time whenever the equities of the case require it to be done.  *Day* v. *Allaire, 4 Stew. Eq. 303* ; *Robertson* v. *Miller, 2 Gr. Ch. 45*.

The vice-chancellor says that the rule is as follows: " The court will not vary or alter an enrolled decree in a material point without a bill of review or a rehearing, but it will amend its enrolled decree even in a material respect, on petition, whenever amendment is necessary to give full expression to the judgment of the court, and the amendment is such as the court would have made when the decree was entered, if it had been asked for."

I think this is a correct statement of the rule. But while the courts will not ordinarily amend or alter an enrolled decree in a material point upon mere motion or petition, it seems now to be well settled that they may grant a rehearing upon such decrees, and on such rehearing alter the decree to suit the equities of the case as they may be developed. *Dorsheimer* v. *Rorback, 9 C. E. Gr. 33; Ruckman* v. *Decker, 12 C. E. Gr. 244; Gardner* v. *Dering, 2 Edw. Ch. 133; Sprague* v. *Jones, 9 Paige 395.*

In *Gardner* v. *Dering,* Vice-Chancellor McCoun said that "An omission in a decree of any matter which would have been inserted as a thing of course may be supplied on motion * * * but that if any error has occurred, or anything material has been omitted in the decree which is not properly a matter of course to correct or insert, then a rehearing should be asked for." This was on an application made in 1834, to add to a decree made in 1827, and the court decided that it could not be done without a rehearing.

Now, if the chancellor had the power to amend this decree upon a rehearing at the time he did amend it, which seems to be entirely clear, I submit that he had the power to do it without a rehearing, by consent. Indeed, there could be no need or use for a rehearing upon a subject upon which both the parties were agreed. If neither party desired a rehearing there was nothing to rehear. That a previous decree may be amended to allow what has not before been granted, without a rehearing, when the opposite party consents, was expressly decided in *McKenzie* v. *Bacon, 4 So. Rep. 65.*

Such, I submit, must be the rule everywhere.

5. As to our motion to amend the bill of complaint and confirm the amended decree, I have only this to say: We never thought that the amendment or the confirmation were necessary, and only made the motion because we supposed that the court desired us to do so, in order to conform our case to its ideas of regularity in practice. If such an amendment, however, is necessary, I submit that we are entitled to it upon the affidavits and consents which we presented.

How far the courts will go in allowing amendments when the interests of justice require it, is illustrated by the case of *Welch's Exrs.* v. *Arnett, 17 Atl. Rep. 289.*

There a material amendment of the answer was allowed after a vast amount of testimony had been taken and the testimony closed, and more than a year after an opinion of the court had been filed settling the rights of the parties.

6. I have now attempted to present this case fully, in its various aspects, to the court, in the hope that the rights of the parties to these funds may be settled, as far as possible, on this appeal. If our amended decree cannot stand, the question will at once arise whether we are not entitled to come in as applying creditors, under the Fayerweather and Ladew bill; or, if not, whether the vice-chancellor was right in denying us the same measure of relief, when the cases were originally decided, as he granted to the Somerville Bank and to Fayerweather and Ladew, and if he was not, whether we may not now have relief by an application for a rehearing, a bill of review, or a direct appeal. These questions were all considered and passed upon by the vice-chancellor, and their decision here would greatly facilitate the winding up of this estate.

In submitting them now, I wish to say that they are perhaps of greater importance to the appellants than appears upon the state of the case. The estate of James S. Davenport, deceased, is insolvent, and his executrix took out the ordinary rule to limit creditors. She filed an inventory, showing no assets of any value, having herself embezzled and misappropriated the whole estate. On this account Judge Runyon refrained from presenting to her the claim of his client, and straightway filed a bill in chancery against her to recover the wasted assets. In the long fight which ensued, he stood shoulder to shoulder with the counsel in the other cases, doing his full share of the work. When the attack came to be made upon the transfer of the bank stock, it is notorious that he discovered the witnesses by whom that was impeached, and yet, if this record be altered, as the Fayerweather and Ladew party desire, it will appear that our clients had no part or share in the discovery of these assets, and

they will be thereby, perhaps, deprived of all right to share in them. A creditor who does not file his claim against an insolvent estate can, ordinarily, share only in assets which he himself discovers and brings in; and I have no doubt whatever that the real object of this attack upon our decree is to make a record against us on this point.

Upon no other theory is it intelligible. But can the court sympathize with such a purpose? Can any one who loves fair play desire to see us deprived of all share in these funds, with the discovery and recovery of which we had so much to do? Will the court enforce a mere technicality of pleading to reach such an end? Must we lose everything that we have won, simply because Judge Runyon pleaded generally what he should have pleaded specifically, or because he failed to actually reduce to writing and file with the clerk an amendment to his bill of complaint, at most of doubtful necessity? I think that the answer to all these questions must be, No. And to the last of them, for the sufficient reason that, inasmuch as the parties to the cause do not complain, the court will not interfere, at the instance of outsiders, simply to enable them to accomplish a manifest inequity.

*Mr. Edward M. Colie* and *Messrs. McCarter, Williamson & McCarter,* for the respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

In the month of January, 1885, William L. Jones, now deceased, exhibited his bill in the court of chancery as a creditor of the firm of Davenport Brothers against Maria Davenport, individually, and as executrix of James S. Davenport, deceased, who, it was alleged, at the time of his death, was a member of such firm. It being shown that James S. Davenport and the partnership of which he was a member were insolvent, the object of the procedure was to subject to the claims of creditors certain real and personal estate which it was charged had been

transferred by the above-named James S. Davenport to his wife, the defendant, Maria Davenport, without consideration and in fraud of creditors.

The bill was avowedly a creditor's bill, itself declaring that it was for the benefit of the complainant and all other creditors of the said James S. Davenport who might come in and contribute to the expense of the suit.

In the month of February following Fayerweather and Ladew, who are respondents in this appeal, filed a similar bill, seeking to set aside, on the same ground, the conveyances of the real estate described in the bill of the appellants, and again in the month of June, in the same year, the First National Bank of Somerville pursued the same course. These three bills were formal creditors' bills, and with respect to object and grounds of equity, were identical.

In the last-named bill, that of the bank, there was a specific statement that a hundred shares of the capital stock of the First National Bank of Jersey City had been transferred to Maria Davenport in fraud of creditors. At the hearing, this specific statement was, by way of amendment, introduced into the bill of Fayerweather and Ladew, but that course was not pursued with respect to the bill of the appellants, but, in lieu of such particularization, there were in the bill last mentioned the following allegations, viz. :

"The said James S. Davenport was also, in his lifetime, possessed of sundry railroad stocks, bonds and other personal securities, to an amount exceeding $20,000, which, after the said firm of Davenport Brothers became embarrassed, he transferred to Maria Davenport. Your orator charges that the said transfer was fraudulent and void as against your orator and the other creditors of Davenport Brothers, and that said securities and the proceeds thereof are held by the said Maria Davenport in trust for your orator and the other creditors of Davenport Brothers."

In this attitude of the pleadings the argument was heard and a decree made, in each of the three cases, to the effect that the conveyances of the lands above mentioned were void, and ordering a sale and directing the proceeds to be brought into court.

With respect to the shares of bank stock above designated, the decree in the appellants' case was silent, giving no relief with regard to them. But in the procedure by the Somerville bank and in that of Fayerweather and Ladew, the money representing this stock, for it had been sold by Maria Davenport, was ordered to be levied and made out of her property and brought into court for distribution.

This money has been raised and is now under the control of the chancellor, and is to be distributed by him.

As just stated, the decree in the suit of Jones did not embrace this fund, and the solicitor in that case, evidently fearing that in such a posture his client would not be entitled to claim a proportionable share when the money should be distributed, resorted to the expedient of having the decree in the case amended so as to give it the operative force of the other two decrees. With this view, Jones, having obtained the consent of all the parties to his suit to such alteration of his original decree, presented a new decree, having the effect just indicated, to the chancellor, who approving it, the same was signed and enrolled. It will be observed that this emendation of the original decree assimilated or rather identified, with respect to scope of operation, these three several suits.

The step thus taken appearing to the counsel of Fayerweather and Ladew to be harmful to the equitable interests of their clients, notice was immediately given of a motion to vacate the decree last mentioned. The motion was made in behalf of Fayerweather and Ladew, and, being successful, a decree was passed in their behalf avoiding the procedure thus put in question. From this last decree this appeal has been taken.

The course thus pursued in behalf of Fayerweather and Ladew appears to this court to have been altogether abnormal. So far as is known, it is not defensible on the ground of any precedent. What has been done is this : a formal and enrolled decree in the court of chancery has been set aside and abrogated, not at the instance of a party to the suit, but on the motion of a mere intruder. The circumstances were these : These three suits were pending, having a common object; they had not been consoli-

dated, and were consequently independent procedures; in the suit of the appellants a decree was taken which the counsel of Fayerweather and Ladew thought would in some measure impair the equitable rights which had, as they supposed, been established by the decree which had been entered in the suit of their clients. The question was, this being so, What was the remedy? It is very plain that Fayerweather and Ladew, for the purpose of redress of this supposed invasion of their rights, could not be translated from their own suit into that of their adversary, and that was the step that was taken. The appropriate remedial method is pointed out in books of practice and in the adjudications. The party thus aggrieved must resort to an original bill, and in that mode, and in that mode only, can he vindicate his rights. It is not conceived that a stranger to the suit can in any way impeach a decree entered in such suit. This is the doctrine taught in all the treatises on the subjects of pleading and practice. Thus, Daniell, when treating of the nature of a bill of review, says :

"It can only be filed by a person who was a party or privy to the former suit; and where any other person considers himself aggrieved by the decree he must proceed by original bill." *2 Dan. Ch. Pr. 1579; Story Eq. Pl. § 409; Mitf. Pl. 137; Style* v. *Martin, 1 Ch. Cas. 150.*

Nor does it vary the rule when the bills in the given case are creditors' bills. It is undoubted that in the present instance Fayerweather and Ladew could have had themselves admitted as creditors in the appellants' suit; but this they did not seek to do, for if they had taken that step, they could not have attacked this amended decree, as it would have been beneficial to them in their character of creditor. What they desired to do, and what they did, was to assail the decree *ab extra.*

The impolicy of sanctioning such a course of practice as this is strongly exemplified in this case. William L. Jones obtained a final decree against Maria Davenport, that she was responsible to him for certain stock that her husband had transferred to her. That decree was assented to by Maria Davenport herself and by all the other parties to the suit. It would seem, there-

fore, that so far forth as such parties were concerned, the decree in question should not have been disturbed, and yet at the urgency of a stranger the entire decree has been avoided. If such stranger had pursued the established course and had filed his bill, all he could have asked was to have the decree so restrained as to be inoperative with respect to his own interests; he would not have been listened to if he had endeavored to modify the decree beyond that limit.

The course taken in this respect is anomalous. If sanctioned it would produce very great confusion in the practice of the court.

In the opinion of the court, this decree vacating the prior decree must, on the grounds indicated, be annulled in this appeal.

But it was contended, both in this court and in the court below, that the amended decree was to be treated as void on two grounds—first, that the decree in question did not relate to any matter embraced in the bill, and therefore pertained to a subject *coram non judice;* and, second, that the primary decree exhausted the power of the court in the premises, and that, consequently, its jurisdiction with respect to them was at an end.

But, in the opinion of this court, neither of these positions can be maintained.

With regard to the former objection, we think it is plain that the decree was germain to the contents of the bill. It is true that the bill did not specify the stock that formed the subject of the amendment. But such stock was comprehended within the general statement of the bill. That statement undoubtedly was loosely drawn; it was defective, not from the fact that it did not sufficiently particularize the personal property alleged to have been transferred to Maria Davenport, but from the fact that, instead of showing how such transfer was fraudulent, it merely averred it to be so. Good pleading required that the circumstances constituting the fraud should be stated, and these were wanting. The fraudulent trait omitted was that the assignment was voluntary, the design being to defraud creditors. If such fact had been stated, it is deemed that this part of the bill would

have been unobjectionable. In cases of alleged fraud these comprehensive charges are very often not only serviceable, but absolutely indispensable. Bills in such instances are for discovery as well as relief, and if the doctrine were that the creditor must specify or particularly describe all the property which it is the design of the fraud-doer to conceal, by putting it into the hands of an accomplice, the remedy would be conspicuously inadequate. In the present instance the objection that this statement did not fulfil the legal requirement is entirely technical; that general statement, in its connection with the previous allegation of the voluntary transfers of the real estate, in fraud of creditors, fell little short of a direct charge that a similar fraud had been perpetrated with respect to the personalty; that it was actually intelligible to the defendants in this sense cannot be questioned, for Maria Davenport, the alleged recipient of the property so transferred, answered the charge, averring that she paid, with her own money, for the stock in question, thus showing conclusively that she fully understood the nature and constituents of the fraud indicated. We think it obvious that the vagueness and generality in this clause of the bill according to our own exposition of the pertinent rule when the case of *Rorback* v. *Dorsheimer,* 10 *C. E. Gr. 517,* was before us, could be objected to only by a demurrer. The entire purpose of the rule that requires reasonable certainty in the stating or other parts of a bill in equity, is to inform the defendant of the *gravamen* of the complaint preferred against him; and it seems to be a plain dictate of justice, that after he has answered such complaint and after evidence on both sides has been taken in its elucidation, he should not be permitted to object to any flaw in the pleading, unless in those very exceptional cases in which he can make it plainly to appear that he has been innocently misled by means of the defect. And, even in this limited class of cases, it is difficult to imagine an instance in which relief would be thus rendered without the imposition of terms protective of the rights of the complainant.

In short, it is clear, we think, that the bill of the appellants did embrace that part of this litigation that relates to this bank stock, and that, consequently, there was error in the original decree

in this respect, and that the amended decree, embodying the proper adjudication of the subject, is, with respect to substance, altogether unimpeachable.

But it is further urged that, even if the primary decree was defective, inasmuch as it had been duly enrolled, it was unalterable by the court. It is said in the brief of counsel that the rule is well settled, that after the term at which a judgment is rendered a court has no power to alter or amend its judgment, or the record which manifests it. Many authorities were cited to fortify the position. If this principle were recognized, the unavoidable consequence would seem to be, that the vacation by the court below of the amended decree was erroneous, as that decree was enrolled.

But, in our opinion, the principle thus appealed to has no application to the problem we are required to solve. That a court of equity can, at any time, unless barred by the limitation of a statute or by paramount equities, alter its own enrolled decrees at the instance of a party to the record, in certain classes of cases, will not, it is presumed, be denied by any one. Barely to posit this proposition is to ensure its acceptance ; and it is equally plain that the suit of the appellants, with respect to the emendation of the original decree, is comprehended within one of the classes of cases thus alluded to, in which alterations of enrolled decrees can be made. When this decree was remodeled an error was inherent in the record, and that error properly formed the basis for a bill of review. In truth, the juncture presented a typical case for this species of remedy, as the error to be corrected became apparent by a mere examination and consideration of the record in connection with the evidence. That such a posture of the proceedings would have warranted the use of the formula referred to, seems to be beyond all question, and it is therefore deemed superfluous to refer to authorities upon the subject.

And from the postulate thus assumed the conclusion necessarily results, that the court of chancery had jurisdiction to alter its original decree; it could plainly have done so through the instrumentality of a bill of review at the instance of the com-

plainant. An alteration of the decree effected in that mode would have been technically correct. This being so, the objection of the counsel of the respondents which is now under consideration is left without support; for if the chancellor possessed the power to alter his decree in a certain mode, his adjudication cannot be impeached collaterally. We have already seen that it could not be impugned by a mere volunteer who had thrust himself into the suit. It is true that, in this instance, a bill of review was not used, the decree being altered by the consent of all the parties to the suit. But the bill of review is not a jurisdictional proceeding; it is the technical form whereby the chancellor exercises the prerogative inherent in him of modifying, in the permitted cases, his decrees. That such an authority, in particular cases, continues in the chancellor, has been attested by many judicial decisions, some of which have been rendered by the courts of this State. *Carpenter* v. *Moorhouse, 2 McCart. 123; Clark* v. *Hall, 7 Paige 382; Sprague* v. *Jones, 9 Paige 395; 2 Hoffm. Ch. Pr. 2.*

The result therefore is, that the claim that, in altering the decree in question, the chancellor went beyond his jurisdiction, so that the matter was *coram non judice,* cannot be reasonably predicated.

It seems proper to add, in order to avoid misconstruction of the views entertained by the court in regard to the practice in equity, in this particular, that this court does not intend to intimate that the decree in the present instance was not corrected in an unexceptionable mode. Why a pure procedure that is not in any sense jurisdictional, and is of no concern to any persons who are not parties to the suit, cannot be waived, in any case, by such parties, is not apparent. Parties to a suit who assent to a decree lose their right of appeal with respect to it, and, consequently, it is not perceived on what ground this amended decree could be challenged by any of the litigants comprehended by the bill of the appellants.

This question, however, is not before us in such a form as to call for decision.

The last subject involved in this appeal which it is necessary

to consider, is the rule relating to the time within which persons who are entitled to come in as participants in the distribution of the funds in court must present their claims. The theory adopted in the court of chancery was this : That a creditor, in order to be entitled to a proportionable share of the assets of the common debtor, must put in his claim under one of the suits and thus become a party thereto prior to the final decree, and that by so doing he acquired the right only of sharing in the assets embraced in the decree in that particular case. The effect of this exposition of the principle of distribution was to deprive the complainant, and the creditors who had become parties to that suit, of all claim to participate in the proceeds of the bank stock ; and as the debt due to the Somerville bank had been paid, the effect of the rule thus defined was to assign the fund in dispute, primarily, to Fayerweather and Ladew and to such creditors as had been joined as parties to that particular bill. The several suits were treated as separate and independent, so that after decree the rights of creditors to the moneys raised under the several executions were definitely and definitively settled. If this court were to sanction this view, it would seem necessarily to follow that the appellants and their associated parties would be entitled to the whole of these moneys, at least to the extent due them ; for as this court has concluded that the amended decree is entitled to stand, and that it embraced the bank stock, on that basis it becomes plain that the appellants' bill imposes the first lien on such stock, as it was the first one in point of time that was exhibited, for it is the filing of the bill that constitutes the lien on equitable assets.

But the view of the equitable rule thus expressed by the vice-chancellor cannot receive the sanction of this court. There were but two judicial decisions referred to in its support, those of *McDermutt* v. *Strong, 4 Johns. Ch. 691*, and *Edmeston* v. *Lyde, 1 Paige 639*, but neither of these cases is pertinent. They were not creditors' bills ; each was a pursuit by a creditor of the property of his debtor in his own behalf alone, and, having obtained a self-serving decree, the common and well-known rule was applied, that such advantage would not be disturbed in behalf of

other creditors who had been less diligent. Such procedures have no affinity with bills exhibited by complainants not only for the benefit of themselves but equally for that of all other creditors who may be made parties; for the very form of such bills excludes the idea that any creditor, or any class of creditors, is to obtain any preference over the others. When, therefore, the question arises with respect to the marshalling the rights of those entitled to share in the division of the property which has been realized through such instrumentalities, the matter is not open to speculation, for the equitable rule is entirely settled, that until the fund in court has been actually dispensed, a creditor presenting his claim cannot be refused a participation in the distribution. This we regard to have been the established practice from time immemorial. Many cases demonstrative of such practice are cited in the learned and well-considered brief of the counsel of the appellants. None have been referred to, and none are known, having a different aspect. Under such circumstances, it appears to be unnecessary to refer to the books or to discuss the subject.

The decree must be reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Dixon, Garrison, Knapp, Magie, Van Syckel, Brown, Clement, Cole, McGregor, Whitaker—11.