## JAMES M. DUNLOP

*v.*

## EMMA L. CHENOWETH et al.

[Decided December 13th, 1918.]

1. The only question to be decided on objections to confirmation of a sale of lands under foreclosure of a mortgage is whether the price was the best that the property would then bring for cash.

2. In a proceeding for confirmation of sale of lands under a foreclosure suit, in view of the purchaser's lien thereon for money expended, a bid—*Held*, not so grossly inadequate as to shock the conscience and prevent confirmation.

3. Where the objection to the confirmation of sale was that the holder of a junior mortgage was prevented by illness from being present and bidding a specific price, and such mortgagee refused to make a deposit to guarantee his bid, the objection and bid must be held not *bona fide*.

4. That a person appeared at the sale and urged the sheriff to delay the sale, stating that the money due on the decree could be secured, but refusing to state for whom he was acting, did not require the sheriff to delay the sale.

On objections to a sale of mortgaged premises.

*Mr. Norman Grey,* for the objections.

*Mr. David O. Watkins, contra.*

BACKES, V. C.

This matter came before me on objections by the defendants Chenoweths to the confirmation of the sale of lands under these foreclosure proceedings. The sheriff sold the mortgaged premises under a writ to execute the decree advised in *88 N. J. Eq. 496*. They were struck off to Colonel George G. Green, owner of the decree, and also of the decree of foreclosure of a second mortgage. *Souder* v. *Chenoweth, Docket 39, 612.* His decrees amount to $15,128.22, and are subject to unpaid taxes on

the land of $1,200. He took up the decrees to help the Chenoweths to save their home and got himself into a peck of trouble. Appealed to in 1915 he bought the second mortgage decree under which the property was then about to be sold. In January last the premises were again advertised for sale, this time under the execution in this suit, and beseeched he advanced the funds, temporarily, to give the Chenoweths a further chance to turn themselves. They were not successful in raising the money, as they had hoped, and after the sale had been adjourned from week to week, to February 28th, the property was put up and sold to Colonel Green. On objections to confirmation, and upon a bill filed by the Chenoweths to set aside the sale, Colonel Green consented to a decree of resale on June 17th. He waited for action by the Chenoweths until July 15th, when he again advertised the sale for August 9th. Upon their application a week's adjournment was granted, upon their assurance that the matter would be adjusted in the meantime. On the day of the sale another adjournment was requested and refused and the property was struck off to Colonel Green on his bid of $2,000, which was the only one made. The ground of objection is "that the property was sold for a grossly inadequate price and leaves a large deficiency hereafter to be paid by the defendants." Three real estate operators gave as their opinion that the property was worth from $20,000 to $25,000. The affidavit of Louis Steelman, the holder of a third mortgage, and who was cut off by the sale, stated that had he been able to be present at the sale he would have bid $16,000, and that he was prepared to bid that sum at a resale.

The sale was conducted fairly, and in all respects according to law. The price was the highest and best that the property would, at the time of the sale, bring in cash, and as this was the only thing to be decided on *objections* a confirmation was advised. In *Oakley* v. *Shaw, 69 Atl. Rep. 462,* Chancellor Walker (then vice-chancellor) held "that the only office of a written objection to the confirmation of a sale in foreclosure under the act of March 12th, 1880, and rule 205 (now 218) of this court, is to urge the overthrow of a sale upon the sole grounds that the property did not bring the highest and best price that could be ob-

tained for it in cash, and that an attack upon the sale on any other ground must be made the basis of independent action, either by bill or petition." This practice rule was accepted with approval by Vice-Chancellor Garrison in *Cropper* v. *Brown, 76 N. J. Eq. 406,* and by Vice-Chancellor Howell in *Koegel* v. *Koegel, 83 N. J. Eq. 179.*

It was not necessary to determine whether under the practice the court may refuse to confirm a sale where the bid is so grossly inadequate as to shock the conscience. I have no doubt that it may, and would, in a proper case, but that situation was not before me. The sale was not of a $20,000 property for $2,000. The bid was made to protect the purchaser's liens of $16,000 plus, and the difference between that sum and the estimated value of the property is a prominent and, most times, and in this case a controlling, factor on an appeal to the conscience on the ground of gross inadequacy of price.

This technical rule of practice, however, would not have been permitted to stand in the way if there had been a meritorious complaint. Confirmation would have been held and leave given to file a petition or bill. From statements made by counsel, unsupported by proof, I gathered that the best that could be put forth under correct procedure was that Steelman, the owner of the third mortgage of $3,000, was ill on the day of sale, and but for that he would have bid at least $16,000; and, further, according to his affidavit above referred to, he was ready to bid that sum on a resale. Such a bid would not have been sufficient to satisfy the prior liens, unless it was meant to be exclusive of the taxes, and would not at all have helped the Chenoweths unless they had had some secret understanding with Steelman that he would hold their equity of redemption in trust. But I concluded to test Steelman's offer with the idea of suggesting a petition if it were *bona fide*—Colonel Green's counsel having intimated that all his client desired was his money. Steelman was called upon to deposit, as I now recall, either $500 or $1,-000 with the clerk of the court to insure his proposed bid. This he declined to do, saying that he would not bind himself other than by the offer contained in his affidavit.

The statement by counsel that except for illness Steelman would have bid $16,000 at the sale was highly questionable. It appeared that on the day of sale, Steelman was represented by one Spencer Simpson, a disbarred lawyer, not to bid but to seek a further adjournment. To persuade the sheriff that funds to pay the execution were within reach, and to induce him to exercise his discretion as to an adjournment, Simpson produced a form of bond and mortgage, made out to him as trustee, evidently executed, or about to be, by the Chenoweths, on the mortgaged property, or, perhaps, it was by Steelman on some of his property, upon which Simpson asserted the money was about to be raised. Simpson refused to state for whom he was trustee, resenting the inquiry by stating that it was none of their business, referring to Colonel Green and his counsel. Manifestly, this was but another step in the process of delay theretofore persistently practiced and patiently submitted to, and the sheriff rightly declined further favors.

Steelman also filed objections, but, as his counsel failed to appear, and upon representations made in open court that he had abandoned them, which Steelman verified by his silence, they were dismissed for failure to prosecute.