Pursuant to a final decree in this cause and fieri facias
issued thereon, the mortgaged premises were sold on August 7th, 1934, by the sheriff of Essex county to the complainant for $500 — or so it is alleged in the petition, although no report of such sale is in the file — and on August 15th, 1934, objections to the confirmation of said sale were filed by Bessie H. Van Sant, one of the defendants, on the ground that the complainant's bid of $500 was grossly inadequate and less than the "fair value" of the premises, which is alleged to be $50,000. The decree was for $37,723.43. No report of sale being before the court and timely objection having been made to confirmation, the sale has not been confirmed, and will not be until after hearing on the objections.
On October 10th, 1934, the objecting defendant filed a petition alleging the sale, the filing of objections as above stated, notice thereof to the complainant, and the institution of a suit at law by the complainant against the defendant-petitioner and others for an alleged deficiency arising out of said foreclosure sale. The petition charges that said suit at law is prematurely brought and prays that its prosecution be enjoined, that the petitioner be allowed further time to plead or answer said suitat law or to move to strike the complaint, and that complainant be held in contempt of this court for "so acting before the termination of this suit." No further or other relief is asked.
The pleading entitled "objections to confirmation of sale" contains the following unusual appeal for relief:
"The said defendant further respectfully petitions and requests your honor to refer this cause to one of the masters of this court for the purpose of establishing the fair value of said mortgaged premises and he further prays that when such fair value has been determined, that application of the *Page 244 
amount of the same by the complainant to the said amount bid at said sale be imposed as a condition before your honor's confirmation of said sale is made."
The court, of course, readily understands what relief the objecting defendant-petitioner seeks here, although her pleadings are inartistically drawn and obviously without any clear understanding of the fundamental requirements for the relief sought. Clearly, what the petitioner desires is that confirmation of the sale be withheld unless and until the fair value of the mortgaged premises is fixed and credited upon any claim for deficiency on the foreclosure decree under the doctrine ofFederal Title and Mortgage Guaranty Co. v. Lowenstein,113 N.J. Eq. 200, and a restraint of the law action pending such credit. But she does not ask for that relief and no facts are alleged in the petition which would entitle her to it. Maher v.Usbe Building and Loan Association, 116 N.J. Eq. 398. The objections to confirmation are based entirely upon the alleged gross inadequacy of price bid at the sheriff's sale and the petition alleges no facts which would invoke the equities of theLowenstein Case.
Judging from the attitude assumed by numerous members of the bar with respect to deficiency claims arising out of mortgage foreclosure actions, the prayers for relief and the general condition of the pleadings in many proceedings similar to that now before the court, it would seem that the scope of the rule of the Lowenstein Case and the fundamental requirements for invoking its doctrine are not generally or fully understood.
To entitle a petitioner to relief under the doctrine of that case, he must affirmatively show (1) sale at an unconscionable figure; or, (2) at a nominal bid plus the absence of competitive bidding due to some fact beyond the control of the petitioner, and facts sufficient to invoke the equitable rule referred to; (3) the existence of an emergency because of which the defendant was unable to protect himself by refinancing or otherwise; and (4) his own inability — lack of financial resources — to protect himself at the sale. Federal Title and Mortgage Guaranty Co. v.Lowenstein, supra; Maher v. Usbe Building and LoanAssociation, supra. *Page 245 
If the price bid at the sale is not unconscionable and there is formal proof as required by the statute that "the property has been sold at the highest and best price the same would then bring in cash," and no objection being made, the sale would be confirmed as a matter of course.
If the bid is merely nominal because of the absence of competitive bidding, due to circumstances beyond the control of the petitioner, it might be unconscionable to confirm, and slight circumstances would move the court to withhold affirmative action.
While, of course, the court will take judicial notice of the existence of the present emergency due to economic conditions, such emergency must be affirmatively alleged, as upon its cessation the application of this equitable doctrine will no longer be necessary. When the reason for the rule ceases to exist the rule itself will fall or its application be suspended.
As to the fourth requirement, in Maher v. Usbe Building andLoan Association, supra, this court said:
"Emergencies such as arose in the Lowenstein Case are essential to invoke the equities there stated. Those equities are well founded in principle, but may be invoked only by the distressed. The disappointed but affluent mortgagor may not take advantage of a rule designed to relieve distress during an emergency to avoid payment of his debt and unload his unprofitable land upon an unwilling mortgagee who is as much entitled to the protection of the court as is the mortgagor."
We think that language is plain, but it is here repeated for the sake of emphasis. It was also there said that the decision in the Lowenstein Case "was born of an emergency, but itestablished no general rule requiring the allowance of credit forthe value of premises sold at foreclosure sale." It is not a rule of universal application. Its limitations have been indicated by later decisions of this court. United Building andLoan Association v. Neuman, 113 N.J. Eq. 244; Fidelity RealtyCo. v. Fidelity Corporation of New Jersey, Ibid. 356; Lurie v.J.J. Hockenjos Co., Ibid. 504; affirmed, 115 N.J. Eq. 304;Kotler v. John Hancock Mutual Life Insurance Co., 113 N.J. Eq. 544; Better Plan Building and *Page 246 Loan Association v. Holden, 114 N.J. Eq. 537; Maher v. UsbeBuilding and Loan Association, supra; Meranus v. Lawyers' andHomemakers' Building and Loan Association, 116 N.J. Eq. 402.
In United Building and Loan Association v. Neuman, supra, we said:
"The rights of a mortgagee demand the protection of this court no less than those of the mortgagor; and it is of the highest interest to the public welfare that no judicial action be taken which would render real estate mortgages less desirable as an investment, a result which quite possibly might follow from indiscriminate restraints in proceedings of this kind; and no impediment should be interposed by this court to the orderly pursuit by the holder of a mortgage of his lawful remedy for the collection of the debt thereby secured, except where necessary for the protection of a countervailing equity."
In Lurie v. J.J. Hockenjos Co., supra, we said:
"The power of this court to grant the relief prayed is not doubted but the prayer of the bill was addressed to the court's discretion and sought relief as a matter of equity and not of strict legal right."
In Fifth Avenue Bank v. Compson, 113 N.J. Eq. 152,
referring to the inherent power of this court to control its own proceedings and processes, and the possible necessity of new applications of "legal and equitable rules and concepts," we said that this was a "power which should be sparingly used," and that was repeated in United Building and Loan Association v.Neuman, supra.
So, while not doubting this court's power to provide a remedy for every wrong cognizable here, and while if "the hardship be strong enough, equity will find a way" (Judge Cardozo, as quoted in the Compson Case), it should be understood that a petitioner seeking relief in this court as a matter of grace must affirmatively show the hardship to exist before he can invoke the equities.
None of the basic requirements above stated are alleged in the petition and only one, unconscionable or inadequate price bid at the sale, is suggested in the objections. *Page 247 
Upon the return of the order to show cause advised herein additional and answering affidavits were filed by the parties, from which it would appear that the petitioner is entitled, at least, to a hearing upon her petition for a credit of the fair value of the mortgaged premises on the deficiency claim. However, the answering affidavits show that the sale was subject to taxes amounting to $4,979.05, which were a prior lien against the mortgaged premises, and which the purchaser would necessarily have to pay eventually in order to hold the property. In considering the adequacy of the purchase price, the amount of prior encumbrances subject to which the sale was made must be added to the amount of the bid. The amount to be considered here is $5,479.05 and not $500, as stated in the objections. Dunlop
v. Chenoweth, 90 N.J. Eq. 85, 87. If the purchase at the sheriff's sale is considered as one of the equity of redemption only, the value of that equity is to be measured by an entirely different yardstick.
The answering affidavits further charge that the mortgaged premises at the time of the sale had a fair value of from $22,000 to $25,000 instead of $50,000 as alleged by the petitioner; also that at that time the petitioner was financially able to protect herself but failed and neglected to do so. This latter charge finds some support in the petitioner's reply affidavit, for she admits having inherited approximately $400,000 in 1928 and to now own mortgage securities of a face value in excess of $250,000. The burden is upon her to show the charge untrue and such other facts as will invoke the equities of the Lowenstein Case.
Obviously, if she was financially able to protect herself at the sheriff's sale, there was no lack of potential bidding and she cannot take advantage of her own neglect. Maher v. UsbeBuilding and Loan Association, supra. In view of the apparent misconception of the basic requirements for the relief sought, and the state of petitioner's pleadings, an opportunity will be given to the petitioner during the ten days next succeeding the date of the filing of these conclusions to amend her petition and file additional affidavits as she may be advised.
On the return of the order to show cause counsel for the complainant conceded that under the doctrine of the Lowenstein *Page 248 Case the petitioner would be entitled to a credit of the "fair value" of the mortgaged premises on the deficiency claim unless he could sustain his allegation of her financial ability to protect herself and her failure and neglect to do so; but he objected to any inquiry as to fair value for the purpose of such credit on the ground that the recent decision of the court of errors and appeals in Fruzynski v. Jablonski, 117 N.J. Eq. 117,
overruled the doctrine of the Lowenstein Case and other decisions of this court following it. That contention, however, is based upon a complete misconception of the appellate decision. The soundness of the doctrine of the Lowenstein Case was recognized by the court of errors and appeals in Vanderbilt v.Brunton Piano Co., 111 N.J. Law 596, and in Lurie v. J.J.Hockenjos Co., 115 N.J. Eq. 304, and the right of this court to control its sales and refuse confirmation thereof when adequate grounds exist therefor was not, and is not now, questioned by the appellate court. The power of this court to control its own decrees, to reopen, set aside or modify, even after enrollment, is as ancient as the court itself, and has long been recognized.Miller v. Rushforth, 4 N.J. Eq. 174; Jones' Ex'rs, v.Fayerweather, 46 N.J. Eq. 237, 254. Indeed, the power was exercised by the chancery court of the Province of New Jersey prior to 1696. Miller, The Courts of Chancery in New Jersey,52. That it was exercised by the court of chancery in England, the source of our inherent jurisdiction, long prior to the establishment of courts of equity in this province, is unquestionable. In Sapinsky v. Stout (1927), 101 N.J. Eq. 813,
the court of errors and appeals held that "a court of equity will set aside a sheriff's sale, on proper terms, even if there has been no fraud, where there is gross inadequacy of price, and the party, by reason of mistake or misapprehension, did not attend the sale, and the sacrifice was caused by such mistake or misapprehension." This power of the court of chancery is not now denied by the appellate court, but is again expressly affirmed. Mr. Justice Lloyd, speaking for that court in theFruzynski Case, said:
"If, in a given case a property is sold so much below its market value as to shock the conscience of the court, the *Page 249 
remedy is to set aside the sale before confirmation (or, if the circumstances justify, probably after confirmation) and effect a resale."
The right of the court of chancery to issue an injunction against the enforcement of a judgment at law when the rules of justice require it, was established in England by Lord Ellesmere, in his famous controversy with Lord Coke, in 1616. Clevenger Keasbey, The Courts of New Jersey, c., 119; Miller, 36. The provincial court of equity exercised this right as early as 1688.Miller, XII, 47, 73, 86. And see Berry v. Bayard, Norris v.Baker (Minutes of Court of Chancery — 1684-1696) 421. If the court of chancery has this power with respect to judgments of courts of law, as it undoubtedly has, a fortiori with respect to its own judgments and decrees.
Apparently, the major criticism of the appellate court is against the mechanics adopted by this court in granting the ultimate relief sought by the petitioning defendant in theFruzynski Case. One criticism is that neither the final decree nor the order of confirmation was vacated before the order of reference was made. But certainly it will not be contended that the court itself could not have heard and considered evidence of any inequity, including evidence touching the value of the mortgaged premises, as a means of determining whether the price bid at the sheriff's sale was unconscionable, or whether for any other reason the order confirming the sale should be vacated, or the final decree opened. The alternative would be to rely uponex parte affidavits, always unsatisfactory in any proceeding. The power imports the right to refer the matter to a master for the same purpose. Only after determining the equitable right of the petitioner would the court be justified in vacating its former decree. In actual practice, however, the usual procedure in cases of this kind is to permit the order of confirmation to stand conditionally — that is, upon condition that a credit of the fair value be allowed upon the deficiency claim — and if the condition is not accepted, the order of confirmation is vacated and a resale ordered. But, in either event, in practice the sale does not "stand as made," and the *Page 250 
purchase price is not conclusive as to value under Snyder v.Blair, 33 N.J. Eq. 208.
Nor is the underlying principle of the Lowenstein Case
anything new in equity jurisprudence. An ancient equitable maxim is that "equity will not suffer a double satisfaction to be taken." Fran. Max. (1728) XI. Its application to the facts of that case is obvious. The same principle was applied inKinmonth v. White, 61 N.J. Eq. 358, 361, by Vice-Chancellor Pitney (1901), and by Vice-Chancellor Backes in Bourgeois v.Risley Real Estate Co., 82 N.J. Eq. 211 (1913), in which, at page 215, he aptly said: "Satisfaction of the debt and not pillage of the debtor's estate is equity's relief."
The Lowenstein Case is not referred to in the opinion of the appellate court in the Fruzynski Case and it would hardly be supposed that the court intended to overrule the doctrine of that case without referring to it by name, especially in view of the fact that in two previous opinions of the court of errors and appeals (Vanderbilt v. Brunton Piano Co., supra, and Lurie
v. J.J. Hockenjos Co., supra), the doctrine is inferentially approved. In the Brunton Piano Case the court, speaking through Mr. Justice Case, said:
"It is within the broad powers of the court of chancery to withhold confirmation of a sale if to confirm would work gross inequity. That principle was applied in Federal Title andMortgage Guaranty v. Lowenstein. * * * If the appellants were, as they seem to have been, subjected to a wrong in the court of chancery, the wrong should have been righted in the court where it occurred; where, also, the remedy could be applied with due regard to the rights and equities of the opposing party."
In the Hockenjos Case the court, speaking through Mr. Justice Trenchard, said:
"We might well affirm the order for the reasons given in the opinion of the court below," except for new arguments raised on appeal. The decision of this court was expressly rested upon the doctrine of the Lowenstein Case and the appellate court could not have been ignorant of that fact.
In view of these expressions of the court of errors and *Page 251 
appeals it is inconceivable that the same court could have intended in its latest pronouncement to question the soundness of the doctrine of the Lowenstein Case. Certainly, since those decisions, the general impression of the bar and bench has been that the principle there enunciated was endorsed. See 57N.J.L.J. 149; 89 A.L.R. 1088.
In our judgment, the Fruzynski Case does not detract in the least from the rule to be deduced from the Lowenstein Case and other kindred decisions of this court cited above. It does not inhibit the allowance by this court in a proper case of a credit of the "fair value" of the mortgaged premises on a deficiency claim. The criticism of the court of chancery was first, because of the failure of this court, on the face of the appeal record in that case, to accord to the mortgagee purchaser the right to choose whether he would keep the property and credit the fair value thereof against the mortgage debt, or would give up the property and submit to a resale; and second, because of the method adopted here to reach an equitable conclusion. In the final analysis, the same result would be reached, though by a longer route, through the medium of successive sales followed by successive refusals of the court of chancery to confirm. "It is a province of equity to avoid circuity of action and multiplicity of suits." Better Plan Building and Loan Association v.Holden, supra. And while the desire of the appellate court for meticulous care in proceedings of this character is shared by us, this court has never been a slave to form. If possible to accomplish by direct action that which is just if attained indirectly, it has always been the policy of this court to do so, because equity regards the substance rather than the form, and the result rather than the method by which it is attained.
The foregoing conclusions have been considered by the chancellor and all his vice-chancellors in conference, and I am authorized to say that they unanimously concur in the views therein expressed. *Page 252