Succinctly stated, the mortgagors and grantees whose interests are implicated in this foreclosure suit have interposed objections to the confirmation of the sale of the mortgaged premises. Their application, introduced by means of petitions and orders to show cause, is to have the confirmation of the sale withheld unless and until the complainants, who *Page 351 
were the purchasers, stipulate that the fair value of the mortgaged premises will be credited on the amount adjudged to be due by the decree. The complainants occupy a fiduciary capacity, and a suit for the deficiency is probably contemplated. The petitioners seek to invoke the principle seasonably annunciated by Vice-Chancellor Berry in Federal Title and Mortgage GuarantyCo. v. Lowenstein, 113 N.J. Eq. 200; 166 Atl. Rep. 538, and further exemplified by him in Young v. Weber, 117 N.J. Eq. 242; 175 Atl. Rep. 273.
The objections to confirmation are rested upon (1) the existence of an emergency attributable to the prosecution of the present war; (2) the financial inability of the petitioners to protect their interests at the sale; and, predominantly (3) the alleged gross inadequacy of the price bid at the sheriff's sale on May 3d 1944, at which there was an absence of competitive proposals. To successfully invoke the doctrine of those cited cases, certain essential factual elements must be satisfactorily established. Young v. Weber, supra.
Significant deficiencies are noticeable in the proofs submitted in the form of affidavits by or on behalf of the petitioners. The emergency calling forth the doctrine in the 1930's was a financial crisis at which the business organism of the country collapsed and a period of desperate liquidation naturally ensued. With credit unavailable, the plight of a debtor was helpless and the consequences inevitably to befall him would be irreparable without the interposition of some consonant measure of equity and justice. Our economic and financial torpidity at that time was a matter of such general knowledge, widespread notoriety, and certainty that it became a subject of judicial cognizance without formal proof.
It was, however, made intelligible that a petitioner in the emergent circumstances was seeking a matter of grace and must therefore affirmatively represent the impending adversity to be beyond his control and means of escape. Judicial notice of the critical economic situation was then acknowledged.
Rules manifestly provisional in an emergency and precarious in the natural order of affairs shed their applicability when the reason for their enforcement expires. Maher v. Usbe Buildingand Loan Association, 116 N.J. Eq. 475; *Page 352 174 Atl. Rep. 159; United Building and Loan Association v.Neuman, 113 N.J. Eq. 244; 166 Atl. Rep. 537; Better PlanBuilding and Loan Association v. Holden, 114 N.J. Eq. 537;169 Atl. Rep. 289.
It is conceivable that distinctive cases may continue to arise to which in equity and justice the emergency rule ought to be applied. Cf. Investors Mortgage and Realty Co. v. PreaknessHills Realty Co., 133 N.J. Eq. 258; 31 Atl. Rep. 2d 830;affirmed, 133 N.J. Eq. 615; 34 Atl. Rep. 2d 1. But it is my conviction that the courts of our state are no longer justified in assuming as a matter of general knowledge that the present state of war is now perpetuating in the field of monetary relations the insuperable difficulties accompanying the financial depression which visited us in 1929.
The petitioners depose: "The pendency of the war has limited sources of refinancing real estate, and especially retail commercial stores having no direct connection with the prosecution of the war, and the present refinancing market constitutes the existence of an emergency disabling petitioners from protecting themselves." That such a condition now (May, 1944, date of sale) prevails is not a matter of such general knowledge and notoriety as to obviate the need of affirmative proof. The abstract statement of itself cannot be accorded the evidential force of the proof required. In July, 1937. Vice-Chancellor Berry remarked, "* * * whether it [the emergency] still exists in this state may be a subject of proof. At any rate, the question cannot be determined on a mere assertion by counsel." Fidelity Union Trust Co. v. Pasternack, 122 N.J. Eq. 180,181; 192 Atl. Rep. 837. On appeal (123 N.J. Eq. 181,196 Atl. Rep. 469) it was stated: "Upon a review of the proofs it is apparent that the Vice-Chancellor might well have found * * * that no emergency existed * * *."
The existence at any given time of the conditions which occasioned the decision in the Lowenstein Case and which justify the application of the rule of that case, is a question of fact to be determined in each particular case.
The efforts, if any, exerted by the petitioners to protect their interests are not disclosed, while at hand is an affidavit *Page 353 
of a prominent banker and real estate broker of the city in which the property is situate, who declares that mortgage loans on properties of the type here involved up to sixty per cent, of their appraisal values are locally available.
The orderly pursuit by a mortgagee of his lawful remedy for the collection of the mortgage debt should not be impeded except where necessary for the protection of a countervailing equity.United Building and Loan Association v. Neuman, supra.
The alleged inadequacy of the bid submitted at the sale remains to be considered. Prior to the economic depression it was the settled doctrine and usual practice of the courts of this state that judicial sales fairly conducted without irregularity or fraud, and not affected by an independent substantive ground for equitable relief, would not be annulled or set aside for mere inadequacy of the price at which the property was sold.Campbell v. Gardner, 11 N.J. Eq. 423; Marlatt v. Warwick andSmith, 18 N.J. Eq. 108, 123; affirmed, 19 N.J. Eq. 439; Morrisse
v. Inglis, 46 N.J. Eq. 306; 19 Atl. Rep. 16; Bethlehem Iron Co.
v. Philadelphia and Seashore Railway Co., 49 N.J. Eq. 356;23 Atl. Rep. 1077; Guarantee Trust Co. v. Fitzgerald Hotel andDevelopment Corp., 97 N.J. Eq. 277; 127 Atl. Rep. 672; New JerseyNational Bank and Trust Co. v. Savemore Realty Co., 107 N.J. Eq. 478; 153 Atl. Rep. 480; Karel v. Davis, 122 N.J. Eq. 526;194 Atl. Rep. 545.
In Karel v. Davis, supra, Mr. Justice Heher delivering the opinion of the Court of Errors and Appeals, observed:
"For obvious reasons, public policy ordains that the power to set aside judicial sales based upon competitive bidding should be sparingly exercised. The integrity of the process, designed as it is to secure the highest and best price in cash then obtainable for the property, demands that a sale so conducted shall be vacated only when necessary to correct a plain injustice. Thus it is that in such matters the court is enjoined to exercise a sound discretion, guided by considerations of justice and equity and not by whim or caprice."
It is not suggested that the sale here under inquiry was accompanied by fraud, collusion, accident, surprise or irregularity, *Page 354 
or that the property was not "sold for the highest and best price the same would bring in cash at the time of the sale." The insistence is that the price is so grossly inadequate as to shock the judgment and conscience of the court and that the confirmation of the sale at that figure will be inequitable and unjust to the petitioners, who are obligated to discharge the mortgage debt.
The bid was $500, but the sale was subject to taxes amounting to $9,223.02. In considering the adequacy of the purchase price, the amount of prior liens and encumbrances subject to which the sale was made must be added to the amount of the bid. Therefore the amount to be regarded here is $9,723.02 and not the bid of $500 upon which the objections are based. Dunlop v. Chenoweth,90 N.J. Eq. 85, 87; 105 Atl. Rep. 592; Young v. Weber, supra.
The total amount to be recovered at the sale was $18,225.36.
A thoughtful consideration of the information concerning the size and physical characteristics of the mortgaged premises and the moderate income obtainable from it, recognizing also the appraisals, leads me to the conclusion that the property probably had a fair value at the time of the sale of $14,500.
There is, of course, no inflexible rule definitely indicating a disparity between bid and fair value which of itself condemns the bid as unconscionable and necessitates a denial of the confirmation of the sale. Fidelity Union Trust Co. v. RitzHolding Co., 126 N.J. Eq. 148, 178; 8 Atl. Rep. 2d 235.
Nor is the test whether the property brought at the sale its full market value. Fidelity Union Trust Co. v. Ritz Holding Co.,supra. To invoke the extraordinary powers of equity it must affirmatively appear that in the circumstances an advantage is being taken over the distressed debtor which is iniquitous and unconscionable. The proofs introduced in support of the present petitioners do not reveal a situation of that character.
The relief for which the petitioners specifically pray is that confirmation of the sale be withheld until and unless the complainants credit on the decree the fair value of the mortgaged premises. I am not persuaded by the proofs that the *Page 355 
petitioners in the factual circumstances disclosed are entitled to that unusual form of relief.
An order will be advised dismissing the petitions.