WETZLER *vs.* SCHAUMANN and others.

1. A sheriff's sale will be set aside where there is gross inadequacy of price, and the party whose interest is injuriously affected by the sale has been prevented by mistake or misapprehension from attending it.

2. Where property is sold under the process of this court for a grossly inadequate price, the court will not permit one who, however innocently and unintentionally, contributes to the mistake of the owner, by which he is misled as to the time of sale, to take advantage of the mistake by a voluntary purchase of the property at the sale.

Application to set aside sheriff's sale.

*Mr. Atwater* and *Mr. R. S. Green*, for the motion.

*Mr. C. H. Winfield*, for Flemming & Roll, the purchasers, contra.

THE CHANCELLOR.

The application in this case is to set aside, on the ground of surprise, a sheriff's sale of mortgaged premises, in which the petitioner, Mr. Henry W. Derby, held the equity of redemption. The purchasers, Messrs. Flemming and Roll, are persons not parties to the suit, with whom, just before the sheriff's sale, he had been in negotiation for the sale of the premises to them. The petitioner was not present at the sale. He alleges that the property was sold for a grossly inadequate price. The purchasers paid twenty per cent. of their bid on the day of sale, but have paid no more, nor has the deed been delivered, the sheriff having been enjoined by the court, from delivering the deed to them.

I do not deem it necessary to discuss the question raised as to the sheriff's advertisement of sale. It appears to have been erroneous in the statement of the parties to the suit, but it is admitted that the petitioner did not see it, and was not, in any way, misled by it.

The petitioner's claim to relief, on the ground of surprise, appears to me to be clear. The suit for foreclosure had been instituted in this court. The petitioner's son had spoken to Messrs. Dutcher and Atwater, solicitors of this court, with regard to looking after the petitioner's interest in the suit. No action was taken by these gentlemen, however, and it does not appear that any was expected of them by the petitioner, nor that he had any reason to expect that they would attend to the case for him. The property was advertised, by the sheriff, to be sold on the 9th of July, last, at Elizabeth. The petitioner was unaware of this fact. About the middle of June, last, he entered into negotiations with Flemming and Roll, with a view to selling the property to them, the special inducement to them, to purchase, being the opportunity that would thus be afforded them to obtain indemnity as to, or payment of, the costs of a certain suit then pending in New York between them and a Mr. Hartman, who had conveyed these premises to the petitioner by deed, in fee simple, but really by way of mortgage to secure to him $1800, and

interest. The price at which the petitioner proposed to sell them the property, was $5500, or thereabouts. After paying the complainant's mortgage and costs of suit upon it, and petitioner's claim of $1800 and interest, there would, at that price, remain a balance of the purchase money to answer the costs of the suit in New York.

In the course of these negotiations, Flemming and Roll had recourse to Mr. Wetzler, the holder of the mortgage, with a view to ascertaining whether the petitioner's statements in regard to the mortgage (they allege that he said it was not yet due, and could stand) were correct. In their interview with Mr. Wetzler, he stated to them that not only was the mortgage due, but that the property would be sold under the decree for foreclosure, on the 15th day of July. On the 7th of July, in the course of the negotiations between them and the petitioner, they taxed him with misrepresentation in the matter, and told him what Mr. Wetzler had told them—that the property was to be sold on the 15th. He expressed surprise, saying he had had no notice of it. The petitioner, and Flemming and Roll, continued their negotiations, he undertaking to make satisfactory arrangement as to the mortgage. According to their statement, it was agreed that he and they should meet at Elizabeth on the 9th, in reference to the assessments on the property. He says they were to go to Elizabeth on the 9th, to see about the assessments, but that it was not agreed that he should meet them there; but that he should meet them in New York, on the morning of the 10th.

It is of no importance who is right on this point. It is clear the petitioner did not expect that his property was to be sold on the 9th. Flemming and Roll, on the 9th, went to Elizabeth to see about the assessments, and, as they say, while making inquiries about the property, accidentally learned that it was to be sold by the sheriff that day, instead of on the 15th. They remained in Elizabeth some hours, up to the time fixed for sale, and at that time were at the sheriff's office. There some conversation took place between

them and Wetzler's solicitor, the result of which was the determination of the latter to set the property up, relying on their buying it. It does not appear that any words or acts of theirs induced him to think so. The property was set up by the direction of Wetzler's solicitor, and was struck off to them at $2600. The petitioner called on them in New York, on the morning of the 10th, and then, to his surprise and indignation, learned from them that the property had been sold, and that they had bought it. He says he expressed his surprise to them, and told them there must be some mistake somewhere; that they then told him they had bought it to protect his interest, and that the purchase would not prejudice that interest, as they would take no advantage of it. This is denied on the part of Flemming and Roll, however. The next day he offered them the amount of their bid, in a certified check, and requested them to let him take the deed for the property. They refused to do so unless he would get a settlement of the suit in New York, in which, it is admitted, he had no interest whatever.

The petitioner has caused the complainant's demand, under the decree and execution, to be assigned to a friend of his, who now holds it accordingly. No objection, therefore, is made, on the part of the complainant, to setting aside the sale.

The purchasers insist that the petitioner was guilty of negligence in not informing himself as to the time when the sale was to take place, and that they "owed him no duty," and therefore cannot be deprived of the benefit of the purchase, because of their communicating to him what Wetzler said to them as to the time of sale.

The right of the petitioner to the aid of the court does not depend on the obligation of Flemming and Roll to him. It is conceded that they stated to him what Wetzler had told them. It is not denied that he was not then aware that the property was to be sold. His whole conduct shows, not only that this was so, but that he supposed, after what they had told him, that the day of sale was to be the 15th. Unless Flemming and Roll are to be charged with duplicity, it must

be admitted that they thought so, too, and only accidentally ascertained, on the 9th, while they were in Elizabeth, that the sale was to take place on that day. While it may be true that, in the language of their counsel, "they owed him no duty" in the premises, they were, nevertheless, in such a position in regard to him, that they cannot, in this transaction, be regarded as ordinary purchasers would be, who had had no part, innocently or otherwise, in misleading, or aiding in misleading him. Without designing to do so, they did mislead him. It is not surprising that the petitioner should have relied on Wetzler's statement as to the time of sale. It appears, by the way, that the latter was not at the sale on the 9th, but was at the sheriff's office to attend to it on the 15th.

There can be no question of the power of the court to set aside sheriffs' sales under the process of this court, where there is a gross inadequacy of price, and the party whose interest is injuriously affected by the sale has been prevented, by mistake or misapprehension, from attending it. *Seaman* v. *Riggins*, 1 *Green's Ch.* 214; *Howell* v. *Hester*, 3 *Green's Ch.* 266; *Hazard* v. *Hodges*, 2 *C. E. Green* 123; *Kloepping* v. *Stellmacher*, 6 *C. E. Green* 328.

The price was inadequate. The petitioner swears that Flemming and Roll agreed to pay him about $5500 for the property. But this was subject to assessments amounting to $985, making the price $4515. They bought it at the sheriff's sale for $2600. It appears to have been worth about $4500. It, therefore, was sold to Flemming and Roll for a little over half its value. They having contributed (innocently, no doubt) to the petitioner's mistake, ought not to be permitted to take advantage of it. When they bid on the property, they had reason to believe that the petitioner's absence from the sale was due to the communication they had made to him on the subject. The court will not, where property is sold under its process for a grossly inadequate price, permit one who, however innocently and unintentionally, contributes to the mistake of the owner, by which

he is misled as to the time of sale, to take advantage of the mistake by a voluntary purchase of the property at the sale.

This case is within the ruling of Chancellor Kent, in *Williamson* v. *Dale*, 3 *Johns. Ch.* 290. The sheriff's sale will be set aside. Inasmuch as Wetzler's demand is under the petitioner's control, no further directions will probably be necessary.

The position of Flemming and Roll, before the court, is not such as to entitle them to its consideration in awarding costs. Having obtained, as they supposed, an advantage over the petitioner, they unfairly sought to retain it, as the means of coercing him to serve their interests. Each party will pay their own costs.