Morrisse v. Inglis.

JAMES A. MORRISSE, appellant,

*v.*

CHARLES A. INGLIS et al., respondents.

An officer of the court of chancery exposed lands for sale in parcels, as required by the decree of sale, and in strict compliance with his duty. He struck off one parcel to the highest bidder therefor, whose bid was made in good faith, without collusion or misconduct, and who complied with the conditions of sale. No accident or mistake, preventing a fair sale of the parcels, is shown.—*Held,* (1) That the bidder ought not to lose the advantage of his bid because another person is ready to give a greater sum for the tract as an entirety than was brought by the sale of the parcels—the increased offer exceeding the amount of sales by only ten and twenty-five hundredths per cent. thereof; (2) mere inadequacy of price *is* no ground for setting aside a sale made regularly and without fraud, where no accident or mistake has intervened to prevent fair competition, the policy of our law respecting official sales not admitting the notion that such sales must be opened because a greater sum can be obtained for the property; (3) if the report recommending a sale by parcels, and the decree confirming the same, appear, by subsequent facts, to have been based on erroneous opinions, it is not a mistake which will justify revoking a sale of a parcel made under the circumstances above stated.

On appeal from an order of the chancellor, made September 16th, 1889, setting aside a sale in the case of *Inglis* v. *Inglis.*

*Mr. Eugene Stevenson,* for the appellant.

*Mr. F. E. Pellet,* for Inglis and others; *Mr. Frank Van Cleve,* for Albert A. Van Voorhis; *Mr. Michael Dunn,* for Hinchcliffe Bros., respondents.

The opinion of the court was delivered by

MAGIE, J.

Morrisse, the appellant, became the purchaser of a lot of land in Paterson, sold in proceedings in equity for the partition of lands of tenants in common, under the following circumstances:

Morrisse v. Inglis.

The decree for sale was made on the report of a master, before whom all the parties appeared, and who, on depositions taken by him, reported that certain tracts, of which partition was sought, were so situated that a partition thereof could not be made without great prejudice to the owners, and that if those tracts were ordered to be·sold, they should be sold, not as an entirety, but in four parcels, particularly described by metes and bounds.

On the coming in of the report, a decree was made directing a special master to sell said tracts, in the parcels described in the report.

Pursuant to the decree, the master exposed the lands for sale in parcels. Appellant bid for one parcel $5,800. This was the highest bid, and the master declared him to be the purchaser. He thereupon paid ten per cent. of his bid, in compliance with the conditions of sale, which he also signed.

The other parcels were struck off and sold to other persons, who also complied with the conditions of sale, the aggregate of the sales amounting to $28,570.

Afterwards the owners of the lands, parties in the cause, presented a petition therein, stating the sales, and representing their belief that if the master had been at liberty to offer the land as an entirety, it would have realized more, because they were informed that persons, present at the sale, would have given more than $28,570 if they could have purchased all the land. The petition further showed that the owners had been offered by persons named $31,500 in cash for the whole of said lands, which they wished to accept. It prayed that the sales made should be vacated, and the master directed to return to appellant and the other purchasers the money paid thereon.

A petition of similar purport was presented by another party to the cause, who held a judgment against one of the tenants in common, who also represented that the sales, if confirmed, would not produce sufficient money to pay any part of his judgment, while, if the later offer could be accepted, his judgment would be nearly satisfied.

The matter thus presented was brought to hearing on affi-

davits and admissions of the parties, the purchasers being repre-sented and resisting the prayers of the petitions.

After hearing, the court made an order setting aside the sales, directing the master to return the moneys paid thereon, and to again expose the land to sale in the manner therein set forth.

The appeal is from this order, and it is insisted that it was not justified by the facts appearing below.

An examination of the affidavits and admissions on which the order was made, shows that the sale was conducted by the master in exact compliance with the decree and the law governing such sales.

Nor does there appear the least ground for suspicion of collu-sion or misconduct on the part of appellant or the other pur-chasers. That they bid in good faith, and, on acceptance of their bids, complied with all the conditions of sale, is conceded.

The order appealed from was evidently based, and it is now supported by argument here, on two grounds: (1) that the price obtained at the sales was less than a resale would produce, and (2) that it was an error or mistake to sell by parcels, rather than as an entirety.

It has long been the settled doctrine and practice of the courts of this state, that judicial sales, made without irregularity or fraud, and not affected by accident or mistake, will not be set aside for mere inadequacy of price. *President &c.* v. *Hassert, Sax. 1; Eberhart* v. *Gilchrist, 3 Stock. 167; Marlatt* v. *Warwick, 3 C. E. Gr. 108; Kloepping* v. *Stellmacher, 6 C. E. Gr. 328; White* v. *Zust, 1 Stew. Eq. 107.* Whether a gross inade-quacy of price will, of itself, be considered proof of fraud, or justify interference, has elicited somewhat variant views from the court of chancery. *Kloepping* v. *Stellmacher, ubi supra; Smith* v. *Duncan, 1 C. E. Gr. 240; Marlatt* v. *Warwick, ubi supra.* But here there was no gross inadequacy of price. The later offer for the land exceeded the amount produced by the sales by only ten and twenty-five hundredths per cent. thereof. Unless the settled practice is to be departed from, this difference is manifestly insufficient to justify an order depriving purchasers of the advantage of their fair purchase.

It is, however, strenuously urged that the increased offer will be of substantial benefit to the parties and particularly to the judgment creditor, and that, as between the parties and the pur-chasers, equity should prefer the interest of the former.

The practice of the English court of chancery in opening sales, whenever an offer of a greater amount for the property was made, was early declared not to have been adopted in this state. *Seaman* v. *Riggins, 1 Gr. Ch. 214.* There is a uniform current of decisions settling that official sales will not be opened on the mere representation that more may be obtained for the property. *Campbell* v. *Gardner, 3 Stock. 423 ; Conover* v. *Walling, 2 McCart. 173 ; Cline* v. *Prall, 12 C. E. Gr. 415.* This well-known practice is in accord with the policy of our law re-specting such sales, which are required to be made, after adver-tisement sufficient to give publicity, by public outcry to the highest bidder. It is of the greatest importance to encourage bidding by giving to every bidder the benefit of bids made in good faith and without collusion or misconduct, and, at least, when the price offered is not unconscionably below the value of the property. Nothing would more evidently tend to discourage and prevent bidding than a judicial determination that such a bidder may be deprived of the advantage of his accepted bid, whenever any person is willing to give a larger price. The in-terest of owners in particular cases must give way to the main-tenance of a practice which, in general, is in the highest degree beneficial.

Because of this uniformity of doctrine and practice, the maintenance of which is required by public policy, I feel con-strained to hold that appellant ought not to have been deprived of the benefit of his purchase because other persons offered the additional amount for the whole tract.

It is further urged that the sales were properly set aside, be-cause a mistake occurred prejudicial to the interest of the parties.

Where a mistake of fact has prevented a fair sale in the man-ner required by law, it may sometimes justify interference with the sale.

But the alleged mistake here is in the judgment of the master,. founded on depositions entirely justifying that judgment, and in the decree of the court confirming the report on the same proofs. The parties might have produced evidence to show the master that a sale as an entirety would be advantageous; if he had not been convinced by such evidence, they might have excepted to his report; if, notwithstanding their exceptions, his report had been confirmed and a sale ordered, they might have appealed. But they could not acquiesce in his report, take a decree thereon, experiment with the sale as ordered, and then, if they deemed it did not turn out to their advantage, deprive *bona fide* purchasers. who had bought under the decree of the advantage of their purchase.

The order appealed from is therefore not justified on either ground and should be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, KNAPP, MAGIE, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, SMITH, WHITAKER—13.