The bill is to foreclose a mortgage and has resulted in a decree upon which there was due at the time of the sheriff's sale $41,787.36. At that sale complainant was the only bidder and bid in the mortgaged premises for $100. Objections to the confirmation are based upon the contention that the sum realized is "grossly insufficient and unconscionably inadequate." There was nothing irregular in the sale, but affidavits filed by the defendants in support of their objections *Page 201 
indicate a complete lack of competitive bidding, not only with respect to the property here involved, but also with respect to practically every property sold by the sheriff on the date of the sale, which was May 2d 1933, and of which there were about thirty. The result of these sales is shown by the following tabulation contained in one of the supporting affidavits:
Amount of decree Sale price of property
 $41,787.36 ................................ $100
 18,487.50 ................................ 100
 10,587.00 ................................ 100
 11,697.25 ................................ 100
 5,237.97 ................................ 100
 9,297.26 ................................ 100
 24,881.80 ................................ 100
 8,475.77 ................................ 5,800
 20,202.82 ................................ 100
 8,993.19 ................................ 100
 9,897.79 ................................ 100
 29,495.38 ................................ 100
 6,606.11 ................................ 100
 2,902.44 ................................ 100
 5,485.56 ................................ 100
 32,468.00[*] ............................. 100
 539.30[*] ............................. 100
 4,761.27 ................................ 100
 8,413.69 ................................ 100
 5,260.42 ................................ 200
 9,600.00 ................................ 100
 7,952.01 ................................ 100
 5,620.63 ................................ 100
 6,935.50 ................................ 100
 9,366.47 ................................ 100
 92,618.72 ................................ 600
 8,410.00 ................................ 100
 7,333.57 ................................ 100
 13,486.63 ................................ 100
 17,873.70 ................................ 100
 10,134.69 ................................ 100
 (The decrees marked with an asterisk were for the satisfaction
of second mortgages.)

In appraising the property as of the date of the sale, a competent realtor says in his affidavit:
"It is not possible to appraise said property or in fact any property from current actual sales in the immediate vicinity *Page 202 
inasmuch as there have been no recent sales except sheriff's sales which are no indication of true value. The real estate market has for a long time been utterly paralyzed. The property, however, can be given some reasonable valuation, arrived at by regard to the capitalization of income, present cost of replacement of the buildings and the likelihood of demand for that kind of property whenever the real estate market becomes fairly normal again;" and he appraises the property at $27,500. The gross rental yield is $3,520 per annum and the property is assessed for the present year for the purpose of taxation at $39,100. No answering affidavits have been filed on behalf of the complainant, and the sum of $27,500 fixed by the appraiser was agreed upon by counsel for the complainant in open court, on the argument of these objections, as the fair value of the premises on the date of the sheriff's sale.
The defendants contend that if the sale is confirmed it will subject them to the liability of a deficiency judgment in excess of the original amount of the mortgage and that such a result, in face of the fact that the agreed value of the mortgaged premises is $27,500, would be unjust and unconscionable. It is contended and admitted that the failure of the defendants to protect themselves at the foreclosure sale, and the lack of competitive bidding thereat, were due to present economic conditions as a result of which the real estate market is stagnant and mortgage money is not available. No argument is needed in support of this contention. The record of sheriff's sales above recited, and which is but a fair example of every-day occurrences throughout the country, speaks eloquently of present-day conditions and of which the court takes judicial notice. Foreclosure sales were originally intended to relieve the mortgagor from the sometimes harsh results of strict foreclosure, as well as to protect the mortgagee when the security proved inadequate; but under present conditions about the only purpose of such a sale is to fix the amount of the deficiency. Except for that, strict foreclosure would accomplish the same purpose. Such a sale is no longer of any protection to the mortgagor. His shield has been converted into a sword to be used against him. *Page 203 
The affidavit of the sheriff attached to his report of sale is to the effect that the price for which the mortgaged premises were sold "was the best that the property would, at the time of the sale, bring in cash," and it is admitted that no higher or better price could have been obtained at such sale on the day thereof.
The questions presented by this proceeding are, first, whether in view of these facts this court may refuse to confirm the sale, and second, if so, what measure of relief is to be afforded to the parties.
Our statute law respecting the report and confirmation of sales of mortgaged premises will be found in P.L. 1880 p. 256; 3 Comp.Stat. p. 3422 and P.L. 1902 p. 541; 1 Comp. Stat. p. 447.
The complainant purchaser insists that upon the facts averred in the sheriff's affidavit, which are not controverted, the court is not privileged to deny confirmation and that the actual value of the property is irrelevant on this motion. The argument that confirmation is obligatory rests on the proviso of section 4 of the act of 1880 "that no sale of mortgaged premises shall be confirmed by the court or further proceedings had until the court, or such judge, is satisfied by evidence that the property has been sold at the highest and best price the same would then bring in cash and such evidence may be in the form of affidavits." Comp. Stat. p. 3422.
The proviso is a limitation upon the exercise of the power to confirm, the limitation being that the court shall not confirm the sale unless satisfied that the price is the highest and best in cash then obtainable, but it is not a mandate to confirm when so satisfied. The legislature did not intend to control judicial action in refusing to confirm when the mortgaged property does not yield an appropriate equivalent in money, but prescribed an upset criterion or proof of fairness of the bid, which, unless met, confirmation must be denied. The statutory proof is the key to but does not rule the decision. It is still the court's privilege to withhold sanction of a sale which frustrates the aim of our foreclosure act, securing by competitive bidding, the highest and best price, not *Page 204 
only to satisfy the debt but as well to save to the owner the value of his equity. It would be inviting a recrudescence of the former harsh remedy of strict foreclosure, whereby the owner lost his all to the mortgagee, if he failed to pay the mortgage debt within a given time, long since abandoned in a spirit of justice to the owner, if upon objection to confirmation of a sale of property clearly worth a thousand for $100, the mortgagee-purchaser could tie the hands of the court by submitting the statutory proof as absolute and invoking the proviso, just quoted, as mandatory. It is my opinion that the proviso leaves supervision of sales bestowed in the body of the act undiminished and judicial action untrammeled save as to requirement of a minimum of proof to safeguard against imposition, and I have no doubt of the court's duty to reject confirmation upon legal or equitable grounds though there be a compliance with the requirements.
While ordinarily confirmation of a judicial sale will not be refused because of mere inadequacy of price, slight circumstances in addition thereto, as shown by a long line of cases, will suffice to move the conscience of the court to refuse confirmation; and gross inadequacy of price sufficient to shock the conscience of the court compels an inference of fraud (Hoffman v. Godfrey, 79 N.J. Eq. 617) and justifies refusal to confirm. The following cases indicate what slight circumstances, coupled with mere inadequacy of price, have been considered as justifying a refusal to confirm:
In Seaman v. Riggins, 2 N.J. Eq. 214, a defendant was misdirected to the place of sale.
In Howell v. Hester, 4 N.J. Eq. 266, the petitioner's agent mistook the date of sale.
In Workingmen's Mutual Building and Loan Association v.McGillick, 28 Atl. Rep. 468, the bidder arrived ten minutes late after having attended at twelve prior adjournments.
In Wetzler v. Schaumann, 24 N.J. Eq. 60, the owner was misinformed as to the terms of the sale.
In Rea's Ex'r v. Wheeler, 27 N.J. Eq. 292, counsel for one of the parties was too ill to attend the sale.
In Banta v. Brown, 32 N.J. Eq. 41, a misunderstanding as to sale arose between solicitors of the parties. *Page 205 
In Dunlop v. Chenoweth, 90 N.J. Eq. 85, a defendant bidder was ill.
In New Jersey National Bank and Trust Co. v. Savemore RealtyCo., 107 N.J. Eq. 478, an interested bidder arrived five minutes too late because of a street car delay.
In Ryan v. Wilson, 64 N.J. Eq. 797, Vice-Ordinary Reed said:
"It would seem that * * * a court might refuse to approve a sale, when, upon the same facts, it would refuse to set aside a sale. The court would simply refuse to exert its poweraffirmatively." (Italics mine.)
He held that the "manner" in which the sale was conducted was responsible for the low bid which the orphans court had refused to confirm and which action he affirmed. His decision was affirmed by the court of errors and appeals, Mr. Justice Dixon, writing for that court, and contrasting the case at bar with chancery decisions involving confirmation of sales pursuant toP.L. 1880 p. 256, said:
"Here the power of confirmation or rejection is untrammeled by the proviso which was supposed to narrow the scope of inquiry in the cases cited, and is committed without limitation to judicial discretion. By force of the statute the `sale' reported to the court is not a perfect contract made by competent parties, but is a bargain dependent upon the approval of the court to render it `valid and effectual in law.' Such approval should, in our judgment, be given or withheld upon consideration, not merely of matters pertinent to the avoidance of a complete contract, but of all matters pertinent to the question of accepting the proposal presented. Among those matters is evidently the propriety of the mode in which the auction was conducted. * * * If the sale is so managed as to discourage bidders and to result in a considerable sacrifice, that circumstance would justify the court in refusing to confirm the sale, even though the purchaser had nothing to do with such mismanagement. The court must regard the interest of those parties whose property it undertakes to sell, as well as the expectations of those who propose to buy."
There the court had under consideration section 85 of the *Page 206 
Orphans Court act (3 Comp. Stat. p. 3842) but that section differs from the statutes here involved only in the requirement that the report of the sale shall show that the price bid was the highest and best then obtainable, an additional condition of the court's approval. But that the court is still free to approve or disapprove notwithstanding this additional condition is the intimation of the court of errors and appeals in its comment respecting the supposed implications of previous decisions of the court of chancery touching this requirement. If the "manner" of the sale is important, so also is the time and the conditions under which it is held.
Section 94 of the Chancery act of 1902, specifically provides that judicial sales pursuant to decree of this court and the confirmation thereof "shall be subject to such rules and orders in respect thereto as the court may at any time make." This is a reservation to the court (although I think none was needed) of complete control and liberty of approval or disapproval of such sales. The reason back of the rule that confirmation of judicial sales will not be refused on the ground of mere inadequacy of price, is that it is considered "of the greatest importance to encourage bidding by giving to every bidder the benefit of bids made in good faith and without collusion or misconduct." (Italics mine.) Morrisse v. Inglis, 46 N.J. Eq. 306. However, "this rule does not rest upon the right of a purchaser because when he bids he understands that it is subject to the approval of the court, but it rests upon the grounds of public policy."Ryan v. Wilson, supra.
Its ineffectiveness to encourage competitive bidding in these times of stress is clearly demonstrated by the record of sheriff's sales on May 2d, above stated. There is no longer any competitive bidding at foreclosure sales and the reason for the rule has temporarily ceased to exist. The reason for the rule having disappeared, the rule itself should fall or its application be suspended until its potency as a factor in producing competitive bidding is restored. Competitive bidding was thought requisite for the protection of the mortgagor whose rights were jeoparded by strict foreclosure. The result of current sales being the same as in strict foreclosure the rule *Page 207 
has ceased to be of any benefit. How long this condition will last no one can say, but certainly during its continuance the application of a rule which will not and cannot accomplish its purpose should be suspended. The rule as shown by the cases has invariably been applied to sales where there has been competitive bidding, not to those where there has been but a single nominal bid.
Chancery rule 218 provides that "unless written objections to the confirmation of the sale be filed within five days from the expiration of the time limited for filing the report * * * an order * * * confirming the sale as valid and effectual in law may be entered."
Rules of court are adopted as a guide to facilitate its business but may be altered, modified or suspended at the court's will to meet the ends of justice.
But quite independently of statute or rule of court, the court of chancery has inherent power to order a sale of mortgaged premises and to control its process directed to that end. JonesMort. (8th ed.) § 2012. The origin of this right was in the civil law. 2 Story Eq. Jur. (11th ed.) §§ 1024, 1025. See, also, Donovan v. Smith, 88 Atl. Rep. 167; Lansing v. Goelet
(N.Y.), 9 Cow. 346. This power was exercised by the English court of chancery as early as the reign of Charles I (1625). Howcont. Vigures, 1 Rep. in Ch. 32. See, also, Booth v. Rich
(1684), 1 Vern. 295; Dashwood v. Bithazey, Mosely, 197
(1729); Mackensie v. Robinson (1747), 3 Atk. 559, notwithstanding strict foreclosure was the rule in England until a late day. Donovan v. Smith, supra; and it seems that this inherent power of the court has never been doubted. Mondey v.Mondey (Lord Eldon, 1813), Ves. B. 223. This declaration by so eminent a chancellor needs no further comment.
In England, under the practice of strict foreclosure, it was sometimes found that an injustice resulted in requiring the mortgagee to accept the security in cancellation of his debt and in Dashwood v. Bithazey, supra, it was held that where the security was defective the cause might be referred to a master to set a valuation on the estate which the complainant *Page 208 
was required to take pro tanto, being at liberty to pursue his remedy at law on the bond for the deficiency; and that became the settled practice in England. Lansing v. Goelet, supra. This practice was afterwards partly superseded by the process of sale as the means of ascertaining the value of the mortgaged estate, such a sale being considered beneficial to both mortgagor and mortgagee. Took v. ----, Dickens, 785 (1784). Constitutionally, this court has succeeded to all the powers and jurisdiction anciently exercised by the high court of chancery of the mother country, unimpaired by legislative enactment.Appendix, 19 N.J. Eq. 577; In re Vice-Chancellors, 105 N.J. Eq. 759; Harris v. Vanderveer's Ex'r, 21 N.J. Eq. 424. That court having, as we have seen, had inherent power to order a sale of mortgaged premises, to fix valuations upon strict foreclosure for the purpose of determining the liability of the mortgagor on his bond, and to control its processes to the end that equity might be done to both mortgagor and mortgagee, the court of chancery of New Jersey has the same jurisdiction and power and may exercise it when occasion requires although it may have lain latent for a long time. A sale which the court may, by virtue of its inherent power, direct, it may also, by virtue of the same power, refuse to approve and confirm. The present sale being in effect a strict foreclosure the ancient practice of appraising the property for the purpose of fixing the deficiency, originally adopted for the protection of the mortgagee, should now be invoked for the protection of the mortgagor. "Equality is equity." It would be unjust to permit the mortgagee to extort double satisfaction from the mortgagor, and it would be equally unjust to compel the mortgagee to accept inadequate security in satisfaction of his debt. But it is considered no injustice to the mortgagee, when a judicial sale of mortgaged premises accomplishes no more than a strict foreclosure, to revert to the English practice referred to and require the mortgagee to accept that security at its fair value and give him the right to proceed on the bond for the deficiency. In this manner both parties are protected and exact justice is accomplished. The same result has been reached in this country upon a foreclosure by entry and possession. *Page 209 Amory v. Fairbanks (1793), 3 Mass. 562; West v.Chamberlin, 25 Mass. (8 Pick.) 335; Newell v. Wright,3 Mass. 138. In Amory v. Fairbanks, it was held that after foreclosure, the estate may be valued and the mortgagee may then be deemed to have received payment pro tanto. In Hatch v.White, 2 Gall. 152; Fed. Cas. No. 6209, Judge Story refers to the principle of that decision as the settled law of the State of Massachusetts and reviews the English authorities on the point.
It is said that there is no precedent for this court's intervention in the instant case; but want of precedent has never been considered a bar to appropriate action by this court.
"The absence of precedents or novelty in incident presents no obstacle to the exercise of the jurisdiction of a court of equity. * * * It is no objection to the exercise of jurisdiction that in the everchanging phases of social relations a new case is presented and new features of wrong are involved." Vanderbilt
v. Mitchell, 72 N.J. Eq. 910 (at p. 923).
"The principles of equity will be applied to new cases as they are presented, and relief will not be withheld merely on the ground that no precedent can be found." Earle v. AmericanSugar Refining Co., 74 N.J. Eq. 751.
One of the maxims lying at the very foundation of equitable jurisprudence is that "equity will not suffer a wrong without a remedy."
The mortgagee will not be permitted to retain the estate which will, in effect, become absolute in him upon confirmation of the foreclosure sale, and also recover the debt which is the consideration of that estate by an action on the bond, except and until he credits upon that bond the fair value of the mortgaged premises so acquired by him. Confirmation will be withheld unless and until the complainant purchaser stipulates that the fair value of the mortgaged premises, which for the purposes of this decision is fixed at $27,500, will be credited on the decree and deficiency suit prosecuted only for the balance thereof.
At the argument of this case Vice-Chancellors Backes and Stein sat with me and I am authorized by them to say that they concur in the views herein expressed. *Page 210