79 N.J. Super. 47 (1963)
190 A.2d 391
79-83 THIRTEENTH AVE., LTD., A LIMITED PARTNERSHIP CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
TERESA DeMARCO, JOSEPH DeMARCO, LOUIS DeMARCO AND DORIS DeMARCO, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 5, 1963.
*50 Mr. Ronald G. Targan, attorney for plaintiff.
Mr. Frank Metro, attorney for defendants.
CONKLIN, J.S.C.
This is a motion for summary judgment by the plaintiff, 79-83 Thirteenth Avenue, Ltd., seeking a judgment for deficiency on a promissory note after foreclosure of a mortgage which secured the note. The court is not concerned with the validity of the note but rather whether the defendants are entitled to have the amount owing on the note reduced by the "fair market value" or "fair value" of the premises. In July 1958 defendants signed a promissory note secured by a mortgage on the premises known as 39 Stone Street, Newark, New Jersey. Pursuant to a final judgment the plaintiff foreclosed on the mortgage. At the sheriff's sale mortgagee plaintiff purchased the encumbered property for $11,000. The amount owing on the note prior to the foreclosure was in excess of $18,000. The defendants deny that plaintiff had at any time made a demand for payment or that plaintiff had stated the amount of the alleged deficiency prior to the institution of the suit.
Defendants contend that the fair market value of the property involved at the time of the foreclosure sale was in excess of $20,000, and therefore no deficiency exists, since the property value exceeds the total amount of the debt, accrued interest, tax costs and sheriff's fee. By way of affidavit defendants indicate that the bidding was not competitive, inasmuch as there were only two active bidders  the plaintiff *51 and a person referred to as a "professional bidder." There is no dispute as to the validity or execution of the note in the present proceeding.
The defendants argue that the plaintiff, noteholder-mortgagee, should be charged with the "fair market value" of the premises foreclosed and that the plaintiff is bound by the provisions of N.J.S. 2A:50-1 to 2A:50-51, more specifically, N.J.S. 2A:50-3. It is the contention of the defendants that if the mortgagee-noteholder institutes a foreclosure proceeding prior to bringing an action on a note, the mortgagee is bound by the statute which provides for a hearing to determine the fair market value of the property.
There is no contention of a bond being executed in this case. The plaintiff argues that the provisions of N.J.S. 2A:50-1 et seq., do not apply and the statute does not control a note secured by a mortgage, and further, the sale price is conclusive of the value of the mortgaged premises for purposes of a deficiency judgment. Plaintiff further contends that the foreclosure sale was open, that the bidding was competitive, and that the defendants had every opportunity to protect their interest at the sheriff's sale, therefore, the defendants cannot at this time press a lack of fair value defense to the resulting deficiency.
The above statute is expressly concerned with foreclosure and actions on mortgage and bonds. Nowhere in the act is any provision made for mortgages securing notes, and, apparently, the statute has deliberately been limited in scope to bonds and mortgages. See Eisenberg & Spicer, "Mortgage Deficiencies in New Jersey," 3 Mercer Beasley L. Rev. 27, 28-29 (1934).
Generally, the provisions of the act have been held applicable to only bonds and mortgages for the same indebtedness and not to notes. Asbury Park & Ocean Grove Bank v. Giordano, 3 N.J. Misc. 555, 129 A. 202 (Sup. Ct. 1925), affirmed per curiam 103 N.J.L. 171 (E. & A. 1926), is authority for the proposition that a holder of a note and mortgage need not foreclose prior to the institution of an *52 action on the note. See also Chodosh v. Schlesinger, 119 N.J.L. 405 (E. & A. 1938). Although the case precedent is limited to holding that foreclosure is not necessary prior to proceeding on a note, the general approach seems to be that "these statutes do not apply where the obligation secured by the mortgage is a note." Silver v. Williams, 72 N.J. Super. 564, 568 (App. Div. 1962). Where the obligation is "in the form of a note, he [mortgagee] was free to proceed to recover upon and collect the obligation free from the restrictions and inhibitions of the statutes cited." Ibid.
As pointed out by Eisenberg & Spicer, supra, 3 Mercer Beasley L. Rev., at p. 34, the law courts have followed a policy of liberal interpretation of the statute in question, the important inquiry being whether the action is being brought to enforce the same debt for which a bond and mortgage have been given. See Wildwood Title & Trust Co. v. Geisenhorner, 11 N.J. Misc. 871, 168 A. 751 (Sup. Ct. 1933). "The form and nature of the action is immaterial if, in reality, it is a proceeding to collect the same debt for which a bond and mortgage have been given. * * * A note is quite a different obligation from a bond, and is not comprehended by the terms of the statute." Id., at p. 875. In the more than 80 years since the statutory scheme first took shape, the concern of the act has been with bond and mortgage transactions.
"Legislation which ignores * * * the problem presented by mortgages securing notes is incomplete and paves the way for future problems and difficulties. The practise of lending money upon bond and mortgage will disappear, except where made mandatory by statute. Those factors and considerations which impelled the Legislature to enact the 1880 Mortgage Act and which caused subsequent legislatures to enact the various amendments and supplements to that Act, have the same force and pressure of public policy behind them when applied to makers of notes accompanying mortgages. * * * Additional legislation is inevitable. The earlier it comes, the fewer will be the problems to solve and the injustices suffered." Eisenberg & Spicer, supra, 3 Mercer Beasley L. Rev., at p. 41.
This case points up the anticipated problem and also indicates an inconsistent legislative approach to the mortgagee-noteholder *53 situation as opposed to the mortgagee-bondholder transaction. However, a bond being completely absent from the present transaction, the statute cannot be held to apply.
If the statute does not apply, the next inquiry is whether the defendants are entitled to an evaluation of the mortgaged premises other than the price obtained at the foreclosure sale for the purpose of a deficiency judgment.
Basically, absent an allegation of fraud, a party to a mortgage foreclosure, unless given statutory authority, is not permitted, when sued for deficiency, to set up the sale on foreclosure of the mortgaged property for an inadequate price as a defense. 37 Am. Jur. Mortgages § 865 (1941). Snyder v. Blair, 33 N.J. Eq. 208, 209 (Ch. 1880), supports the notion that the mortgagors are not entitled to any deduction from the mortgage debt beyond the net proceeds of the sale and that the "sum for which property conveyed in pledge for the security of a debt is sold at judicial sale, must, so long as the sale stands, be taken, as between the parties to the suit, as a conclusive test of its value." Underlying this theory is the concept that the confirmation of a foreclosure sale is the final judicial determination that the mortgaged property was sold at a fair price, and therefore, the defense of inadequacy of price cannot be raised in subsequent proceedings, and for the purpose of deficiency decree the price obtained at the sale is conclusive on the question of the market value of the property. See Cronin v. Gager-Crawford Co., 128 Conn. 688, 25 A.2d 652 (Sup. Ct. Err. 1942).
The above principle has, however, been questioned and modified, especially during the period of economic depression. See, e.g., Baader v. Mascellino, 113 N.J. Eq. 189 (Ch. 1933); Better Plan Bldg. & Loan Ass'n v. Holden, 114 N.J. Eq. 537 (Ch. 1933). In order properly to evaluate any modification of the above rule, it is important to recognize the necessity that in order to protect his security, a mortgagee be permitted to bid in and purchase at the foreclosure sale without losing his privilege to obtain a deficiency judgment *54 for the difference between the sale price and the amount of the mortgage debt. 4 American Law of Property, §§ 16.202, 16.209 (1952). Furthermore, the court must be aware of the basic equity principle, not dependent upon statute, that the mortgagee is not entitled to recover more than the full amount of his mortgage debt. E.g., Federal Title & Mortgage Guar. Co. v. Lowenstein, 113 N.J. Eq. 200 (Ch. 1933); Fidelity Union Trust Co. v. Multiple Realty & Constr. Co., 131 N.J. Eq. 527 (Ch. 1942). Both of these were "depression period" cases. See also N.J.S. 2A:50-22(d).
In Federal Title & Mortgage Guar. Co. v. Lowenstein, the court said:
"The mortgagee will not be permitted to retain the estate which will, in effect, become absolute in him upon confirmation of the foreclosure sale, and also recover the debt which is the consideration of that estate by an action on the bond, except and until he credits upon that bond the fair value of the mortgaged premises so acquired by him." (at p. 209)
And, in Fidelity Union Trust Co. v. Multiple Realty & Constr. Co., the court commented:
"All that complainant can ask in equity is that his debt shall be paid, for `equity will not suffer a double satisfaction to be taken.' * * * `Satisfaction of the debt not pillage of the debtor's estate,' is the province of the court of equity. That it would be unconscionable to permit a mortgagee to hold the mortgaged premises and to also collect the full amount of the mortgaged bond, thus obtaining a double satisfaction of his debt, has been repeatedly decided by the courts of this state." (at p. 541)
These statements would seem to be dispositive of the matter, regardless of the statute in re foreclosure, supra. The instant case does not appear to be within the rationale of the Lowenstein case. The basic rule is that the judgment in a foreclosure proceeding is res judicata. Only upon the defendants' showing of extreme and unusual circumstances can a court of equity set aside a foreclosure sale with another opportunity for open sale in order to establish the value of the property.
*55 Prior to any statutory precedent where the proceeds of the sale of the property were insufficient to pay the obligation, the mortgagee could enforce the mortgagor's personal liability only by a separate action at law against the mortgagor. Klapworth v. Dressler, 13 N.J. Eq. 62 (Ch. 1860). Plaintiff has properly instituted this action in the Superior Court, Law Division, and in order to avert circuity, the defense, though equitable in nature, should be asserted in the present proceeding. However, generally in an action at law for a deficiency, the amount of the mortgage debt found due and owing in the foreclosure suit is res judicata. That amount, less the sum realized at the sale, determines the amount of the deficiency. In the deficiency the only matters to be considered by the court are the amount of the debt as adjudged by the chancery court and the amount by which it has been reduced by the application to it of the proceeds of the foreclosure sale. Murray v. Pearce, 95 N.J.L. 104 (E. & A. 1920).
It appears that the mortgagors, as limited partners and obligors on the note, were parties to the foreclosure proceedings and made no objection to the sale conducted on September 18, 1962. The application of res judicata rests substantially upon whether the judicial sale had been confirmed by the chancery court and the mortgagor had an opportunity to object to the confirmation. See Fidelity Union Trust Co. v. Multiple Realty & Constr. Co., supra, 131 N.J. Eq., at pp. 532-535. Under the former Chancery practice (Chancery Rule 218) the sheriff or other officer was required to report the sale to the court, and the court was obliged, if it approved the sale, to confirm it as valid and effectual. The present procedure gives the mortgagor an opportunity to object to the sale upon legal or equitable grounds within the time specified in R.R. 4:83-5. Penn Federal Savings & Loan Ass'n v. Joyce, 75 N.J. Super. 275, 282-83 (App. Div. 1962). As outlined in Crane v. Bielski, 27 N.J. Super. 448, 458-59 (App. Div. 1953):
*56 "Rule 3:77-5 (now R.R. 4:83-5) of the Superior Court authorizes the sheriff to deliver a deed in pursuance of the sale unless a motion for the hearing of an objection to the sale be served upon him within ten days of the date of sale, or at any time thereafter before delivery of the deed.
Thus the statute and the rule cited did away with the former requirement that a sheriff's foreclosure sale be confirmed by the court prior to execution and delivery of the deed, and now authorizes the sheriff to execute and deliver a deed without confirmation after the expiration of ten days from the date of sale unless there shall be served upon him within said ten-day period notice of a motion for the hearing of an objection to the sale, which motion the court is authorized to dispose of in a summary manner.
It is true that under the old practice requiring a report of sale and confirmation by order of the court, a foreclosure sale by a sheriff was not complete until confirmed by order of the court." Citing Federal Title & Mortgage Guar. Co. v. Lowenstein, supra, 113 N.J. Eq. 200; and Vanderbilt v. Brunton Piano Co., 111 N.J.L. 596, at p. 601 (E. & A. 1933).
Absent the necessity for confirmation in accordance with the present procedure, under the rationale of Harvester Bldg. & Loan Ass'n v. Kaufherr, 122 N.J. Eq. 373 (E. & A. 1937), defendants' failure to object to the sale indicated defendants' implied agreement that the sale of the mortgaged property was equitable. If there were any inequity in the sale, an objection could and should have brought such inequity to light. In accordance with the procedure adopted in the Lowenstein case, the court could have compelled the mortgagee to credit the "fair value" of the premises on his deficiency claim as a condition to granting confirmation. Failure to so object indicates an acquiescence by the defendant to the sale as being for the "highest and best price" the mortgaged premises would bring in cash at the time of the sale.
Federal Title & Mortgage Guar. Co. v. Lowenstein, supra, 113 N.J. Eq. 200, is an example of a situation where application for relief was made prior to confirmation of the sale, and the question of res judicata was not before the court. See, Young v. Weber, 117 N.J. Eq. 242 (Ch. 1934), which reaffirms Lowenstein and in which timely objection was taken to the confirmation. Therein the court further points out *57 that "the usual procedure * * * is to permit the order of confirmation to stand conditionally  that is, upon condition that a credit of the fair value be allowed upon the deficiency claim  and, if the condition is not accepted, the order of confirmation is vacated and a resale ordered." Id., at p. 249.
However, in those cases where the foreclosure sale had been confirmed and a deficiency action begun, the confirmation decree was held to be res judicata as to the mortgage debt remaining or, at least, the mortgagor was estopped and the defendant was not entitled to reconsideration as to value unless the mortgagee was restored to his status prior to the sale. Fruzynski v. Jablonski, 117 N.J. Eq. 117, 122 (E. & A. 1934), holds that the obligor's failure to act, though made party defendant to a foreclosure, cannot operate to relieve him of the adjudication of the court in that suit. The finding of res judicata on the question of the mortgage debt, and the appellant's right to sue at law for deficiency on the bond is clear and certain. See also Broadman v. Colonial Bldg.-Loan Ass'n, 118 N.J. Eq. 275 (E. & A. 1935); Meranus v. Lawyers' & Homemakers' Bldg. & Loan Ass'n, 118 N.J. Eq. 586 (Ch. 1935).
The defendant, under the procedure adopted in the Lowenstein case and the line of decisions following, can ask only that confirmation be conditioned on the plaintiff's crediting the defendant with the "fair value" of the mortgaged premises or that the sale be set aside and the property resold. Harvester Bldg. & Loan Ass'n v. Kaufherr, supra, 122 N.J. Eq., at pp. 377-8, points out the basis for such a limitation.
"The practice on seeking to have what is called fair value substituted for market value, as evidenced by fair and open sale at the highest and best price that the property would bring in cash at the time of sale, may be made quite as oppressive to a mortgagee as it is helpful to a mortgagor. It is to be invoked only in urgent public emergency when the tissue of society is awry, and then only upon the conditions and in the manner which our courts have recognized as essential to such interposition by equity in the contractual rights and duties of individuals. The authority of Chancery therein lies in the power of that court to withhold confirmation of sale if to confirm would work gross inequity."
*58 Absent a controlling statute, an inquiry as to value subsequent to sale is relevant only upon mortgagor's timely objection to the sale and upon requesting a resale if equity deems it necessary. To hold otherwise would, in essence, compel the judgment creditor, having bought in the property, to continue to hold it and to credit the fair value against the judgment, notwithstanding the defendant's financial ability to protect his own interest. Protection of the respective rights of the parties is paramount, but there must be a terminal point to litigation. This is especially relevant to the instant case, for the defendants have not attempted to establish their financial inability and may be attempting to place the burden of an unfavorable investment upon the mortgagee-noteholder. By their failure to object to the foreclosure sale and election to await the deficiency action, the defendants are guilty of laches and are estopped from asserting a right to fair value. Cf. Harvester Bldg. & Loan Ass'n v. Kaufherr, supra, 122 N.J. Eq., at p. 379.
The Fidelity Union Trust Co. v. Multiple Realty & Constr. Co., supra, 131 N.J. Eq. 527, 535, cited by defendant, a case involving an assuming-grantee, found res judicata not applicable, adopting the reasoning of Mann v. Bugbee, 113 N.J. Eq. 434 (Ch. 1933), that the suit for personal judgment for deficiency against the subsequent assuming-grantee is not a suit for the same cause of action as the foreclosure suit. This case is not controlling in light of the facts as presented in the instant case.
The plaintiff further contends that the facts as presented in the instant case lack the special equity necessary to entitle the applicant to the relief sought. Under the doctrine of the Lowenstein case, the applicant for "fair value" credit must show:
"(1) sale at an unconscionable figure; or (2) at a nominal bid plus the absence of competitive bidding due to some fact beyond the control of the petitioner * * *; (3) the existence of an emergency because of which the defendant was unable to protect himself by refinancing or otherwise; and (4) his own inability  lack of financial *59 resources  to protect himself at the sale." Young v. Weber, supra, 117 N.J. Eq., at p. 244 (Ch. 1934).
This has not been shown by affidavit or otherwise. The defendants have alluded to the lack of competitive bidding. However, they have not contended that the sale figure was unconscionable nor that an economic emergency existed which deprived the defendants of the opportunity to refinance the mortgaged property. The defendants in their answer merely state that the "fair market value" (the statutory term) of the property was in excess of $20,000, and by way of affidavit allege that the bid of $11,000 was far short of the fair value (the term used in the line of decisions following Lowenstein). Such allegations are not sufficient to establish the plaintiff's bid as unconscionable or unreasonably low. See Fidelity Union Trust Co. v. Pasternack, 123 N.J. Eq. 181, 183 (E. & A. 1938).
Poultrymen's Service Corp. v. Brown, 77 N.J. Super. 198, 206-07 (Cty. Ct. 1962), points out the basic reason legislation governing bonds and mortgages has not been extended nor can it be extended in total to situations where a note has been given simultaneously with a securing mortgage:
"Unlike a bond, a note may be a negotiable instrument. Notwithstanding that it may be delivered together with a mortgage, it need not make reference to such mortgage and may be negotiated. It certainly does not follow that an instrument capable of physical separation from the mortgage and capable of negotiability from one person to another would carry with it all the terms, covenants and conditions of a mortgage to which there is no reference. In order to ensure uniformity and facility in commercial transactions it is imperative that negotiable instruments be permitted to circulate unencumbered by collateral and undiscoverable restrictions."
However, it is difficult to rationalize the difference in treatment accorded the mortgagee-bondholder from that accorded the mortgagee-noteholder where foreclosure of the mortgage precedes the institution of a suit for deficiency on the note. Under such circumstances no third party rights grounded in the negotiability of the instrument have intervened, and the *60 transactions are in substance identical. The court does not feel it should contravene the intent of the Legislature to treat bond and mortgage transactions distinct and separate from those involving a note and mortgage.
For the reasons set forth above, let an order of judgment for the plaintiff be entered.